Kevin R. MULLING *v.* Teresa W. MULLING

95-333                                    912 S.W.2d 934

Supreme Court of Arkansas
Opinion delivered January 16, 1996

*Dunham & Ramey, P.A.*, by: *James Dunham*, for appellant.

*William F. Smith*, for appellee.

TOM GLAZE, Justice. Appellee Teresa Mulling filed suit for divorce against appellant Kevin Mulling, and after a contested hearing, the chancellor granted Teresa a divorce and awarded her custody of the parties' three children. Kevin, who had resigned his job during the pendency of the action, was ordered to pay $117.00 child support per week, which sum would be reduced to $107.00 per week when Teresa commenced receiving one-half of Kevin's $306.01 monthly pension. The chancellor further ordered Kevin to pay $1.00 per month alimony for a five-year period, but alimony would terminate upon

Teresa's remarriage or death. The trial judge also approved the parties' settlement concerning household effects, automobiles and personal effects, including the already equally divided equity from the sale of the parties' "jointly-owned" house. Kevin appeals from (1) the chancellor's award of alimony and (2) the judge's failure to award Kevin the first $8,000.00 from the parties' equity in the house proceeds. In arguing his second point, Kevin argues the $8,000.00 amount he seeks can be traced to his separate property owned prior to marriage.

■■ Kevin first argues the evidence is insufficient to support an alimony award. This court has held that the chancellor can make an award of alimony that is reasonable under the circumstances. *See Harvey* v. *Harvey*, 295 Ark. 102, 747 S.W.2d 89 (1988); Ark. Code Ann. § 9-12-312(a)(1) (Repl. 1993). The court has also said that the purpose of alimony is to rectify economic imbalance in earning power and standard of living in light of the particular facts in each case. The primary factors to be considered are the need of one spouse and the other spouse's ability to pay. *Id.*; *see also Boyles* v. *Boyles*, 268 Ark. 120, 594 S.W.2d 17 (1980), (where this court listed illustrative factors courts have used when fixing the alimony amount).

In this case, the parties have been married thirteen years, and Teresa bore three children during the marriage. Although Teresa had obtained a marketing degree from the University of North Alabama, she never worked after her marriage to Kevin. During college and immediately prior to marriage, Teresa had worked as a legal secretary and also as a health physics technician with the Tennessee Valley Authority (TVA). After filing for divorce, Teresa was employed as a substitute teacher in elementary school and worked as a real estate agent. Her monthly income earned during the pendency of the divorce was $85.00. Teresa testified she has no health or physical limitations, and she was trying to locate a job that would permit her to be home at night and on the weekends with the children. Teresa testified that her monthly expenses amounted to $2,038.99.

Kevin, on the other hand, is an engineer and had previously worked in that capacity at TVA and later with Entergy at Arkansas Nuclear One in Russellville. When this action commenced, his base salary was $65,000.00 a year, and he earned an

additional yearly amount of $10,000.00 in overtime. Sometime after the divorce suit was filed, Kevin was apparently given the option to resign by Entergy because Kevin had a "drinking problem." When the parties' divorce was granted, Kevin was receiving unemployment pay in the amount of $256.00 per week. He also received a monthly pension in the sum of $306.01. Kevin testified that he could not presently get a job in his industry, but he otherwise expected he could find employment paying around $35,000.00 to $40,000.00 per year. Kevin further listed his monthly living expenses at about $735.00. At the time the parties' divorce was granted, Kevin testified that he had spent most of the proceeds he had received from the sale of the parties' house to meet his monthly expenses plus his child support, alimony, bills and insurance ordered under the trial court's temporary order.

■ From the foregoing evidence, we cannot say the chancellor abused his discretion in reserving an award of alimony, at least for a period necessary for Teresa to reenter gainful employment. Teresa's needs are evident, since Kevin had been the family's sole breadwinner during the parties' entire marriage. Also, it is clear Kevin has the capacity and ability to pay alimony based both on his past employment history and his testimony concerning future employment expectations. However, we do have problems with the manner in which the chancellor directed alimony payments be reserved and paid.

■ In *Grady* v. *Grady*, 295 Ark. 94, 747 S.W.2d 77 (1988), Dale Grady, an attorney, had left his job, paying $1,900.00 a month, and went into solo law practice, where his net income was only $81.00 per week. There, this court held it is inequitable to hold that a spouse who may be entitled to alimony is forever barred from receiving it because the spouse who should pay it cannot do so at the moment of entry of the divorce decree. The *Grady* court further concluded as follows:

> [I]f either spouse is entitled to alimony, the chancellor must comply with the statute by making that decision when the decree is entered. If circumstances prevent the spouse who is to pay the alimony from being able to do so, then the court may recite that fact and decline to award a specific amount. Thereafter, if circumstances change in a

way that will permit the payment of alimony, the party who has been determined to be entitled to it may petition the court. By following this procedure, the court will have complied with the statute without resorting to the sort of subterfuge inherent in awarding a nominal amount.

■ In accordance with this court's holding in *Grady*, we affirm the chancellor's intention here to reserve the possible fixing of a specific and reasonable amount of alimony at a future time when the circumstances permit it. However, upon *de novo* review, we modify the chancellor's divorce decree to reflect that Kevin's unemployment prevents him from paying alimony at the time of entry of the decree, although Kevin's earning capacity would otherwise warrant such an award of alimony. In accordance with *Grady*, the decree should read to reserve to Teresa the right to petition the trial court to establish an alimony amount if circumstances change. The five-year time constraint and other restrictions on alimony set out in the decree remain in effect.

■ Finally, we mention the case of *Ford* v. *Ford*, 272 Ark. 506, 616 S.W.2d 3 (1981), which was discussed in Grady. In *Ford*, this court overturned the chancellor's decision denying alimony "for the time being, but retaining jurisdiction as to the possible future needs of the wife." While this court in *Grady* recognized that the decision in *Ford* incorrectly held the chancellor had no power to retain jurisdiction or to treat alimony as a matter "reserved for future consideration," the *Grady* court did not overrule that holding in *Ford*. We do so now, at least to the extent the *Ford* holding conflicts with *Grady* and today's decision. In other words, if a spouse shows a need for alimony, and the other spouse is shown to have the ability or earning capacity to pay alimony except for a circumstance at the time the parties' decree is entered, the chancellor may reserve jurisdiction, without assigning a nominal amount. This procedure would permit the spouse requesting alimony to petition for its payment after showing a change in circumstance.

We next address Kevin's argument that the chancellor erred in failing to award him the first $8,000.00 of the sale proceeds of the parties' house. Sometime after the chancellor's temporary order granting Teresa possession of the parties' home, the parties

sold the home and split approximately $45,000 in proceeds equally. The parties' sale of their house was in keeping with the trial court's temporary order reflecting their agreement to sell at a private sale.

Kevin and Teresa agree they had originally purchased the house in Russellville as husband and wife and held the property by the entirety. Kevin asserts, however, that before his marriage to Teresa, he had owned a house which he sold and those proceeds, $8,000, were used by Kevin and Teresa when purchasing several homes (including the Russellville house) in both their names during their marriage. Because the $8,000.00 was his nonmarital property owned prior to marriage, Kevin claims he is entitled to its return pursuant to Ark. Code Ann. §§ 9-12-315(a)(2) and (b)(1) (Repl. 1993).

Teresa counters Kevin's argument, by stating (1) the parties' Russellville home was held by the entirety, and accordingly, they agreed to sell and split the proceeds equally which the chancellor approved in the final decree; and (2) citing *Lofton* v. *Lofton*, 23 Ark. App. 203, 745 S.W.2d 635 (1988), once the parties, as husband and wife, place property in their names without specifying the manner in which they take the property, a presumption arises that they own it by the entirety and it takes clear and convincing evidence to overcome that presumption. In this second instance, Teresa states that Ark. Code Ann. § 9-12-317 (Repl. 1993) is the only authority for dividing estates by the entirety, and it provides for equal division by the parties. *Warren* v. *Warren*, 273 Ark. 528, 623 S.W.2d 813 (1981).

We dispose of Kevin's second point, because the record supports the chancellor's finding that the parties had settled their respective equity interests in their home by agreeing to sell and divide the proceeds. At trial, Teresa's counsel objected to Kevin's testimony concerning the sale of Kevin's premarital home and the use of those sale proceeds in purchasing subsequent houses in both parties' names. Teresa's counsel pointed out to the chancellor that without Kevin's mentioning premarital property or asserting entitlement to $8,000.00, the parties made their own settlement, agreeing to sell their house and to split the proceeds in half. While the chancellor allowed Kevin to present further testimony on this point, the chancellor at the end of the hearing

specifically held that all the proceeds from the sale of the house had been properly divided, and the chancellor in his decree approved the parties' settlement and division of proceeds. We also note again the chancellor's earlier témporary order which acknowledged that the parties had already agreed to sell their home. While no mention or distribution of the sale proceeds appeared in the temporary order, the record reflects Kevin waited until the final hearing, several months after selling the property, to assert his $8,000.00 premarital property claim. Because we uphold the chancellor's approving the parties' settlement of their equity interests in their home, we affirm.

■ We should add that, regardless of the parties' decision to sell their house and equally divide the proceeds, Kevin's argument would still fail. Case law has held that, when a husband and wife purchase property as a tenancy by the entirety, there arises a presumption of a gift from the party furnishing the greater part of the consideration to the other party, which although rebuttable, is strong and can be overcome only by clear and convincing evidence. *Lyle* v. *Lyle*, 15 Ark. App. 202, 691 S.W.2d 188 (1985); *see also McLain* v. *McLain*, 36 Ark. App. 197, 820 S.W.2d 295 (1991); *cf. Canady* v. *Canady*, 290 Ark. 551, 721 S.W.2d 650 (1986). In the present case, we carefully reviewed the record and find no evidence to rebut the presumption of the $8,000.00 being a gift.

For the reasons above, we affirm as modified.