James L. HIETT v. Vicki L. HIETT

CA 03-812                                      158 S.W.3d 720

Court of Appeals of Arkansas
Division III
Opinion delivered April 14, 2004

*Keith, Miller, Butler & Webb, PLLC*, by: *Mary M. White Schneider*, for appellant.

*Boyer, Schrantz, Rhoads & Teague, PLC*, by: *Johnnie Emberton Rhoads*, for appellee.

ANDREE LAYTON ROAF, Judge. Appellant James Hiett appeals from the trial court's award of alimony to appellee Vicki Hiett pursuant to their divorce decree. On appeal, James argues that the trial court erred by: (1) including his future stock options in the alimony award because such an award circumvented Arkansas's restriction on the division of non-vested employment benefits upon divorce; (2) awarding Vicki lifetime alimony that will only terminate upon her death, cohabitation, or remarriage. We affirm.

The parties to this appeal were married in 1977 and have one adult son. After more than eighteen months of separation, the parties were granted a divorce in a decree entered on April 17, 2003. The parties stipulated, among other matters, that all marital property would be divided equally, including James's profit sharing account worth $130,630, his 401(K) plan worth $12,357.48, his stock purchase account worth approximately $60,000, an investment account containing approximately $103,000 in cash and securities, James's vested and exercised stock options worth approximately $350,000, and the marital home, with a market value of approximately $125,000 and a mortgage balance of $90,000.

At the divorce hearing, Vicki testified that she was forty-eight years old and that she had been married to James for twenty-five years. She stated that she was not currently employed and that she had not worked outside the home for twenty years, since their son was born. Vicki completed approximately two and one-half years of college before the marriage, and she testified that she then started working as a cashier making minimum wage. Shortly after they were married, the parties moved to College Station, Texas, where James attended school at Texas A & M and worked part-time. Vicki was employed as a secretary at the university during that time, earning minimum wage. After several years, Vicki was promoted and worked as a lab technician for approximately one year, again earning minimum wage. The par-

ties then moved to Mississippi, where Vicki was employed by a company that made rubber stamps and trophies and earned slightly more than minimum wage. After she worked there for several months, she became pregnant, and she testified that she and James agreed that she would stay home with the baby because he had a good job.

Although she was not currently employed, Vicki testified that she had always anticipated returning to work and that she would like to work in a library, school, or bookstore. She stated that she did not feel that she had the skills to return to college after twenty-eight years. She also stated that she was an average student in the past and that she assumed her prior college credits were no longer active. Vicki further testified that the only health problems she suffered before her separation from James were migraine headaches, although she had experienced extreme depression after the separation. She stated that she had been undergoing counseling and that she was on medication for her depression and anxiety. She testified that she was asking for alimony and attorney's fees.

James testified that he received a bachelor of science degree in agricultural science while the parties were married and that he had been employed at Wal-Mart for more than fifteen years. He stated that his current salary was $91,000. In addition to his salary, James testified that he receives stock options valued at approximately 25% of his salary and a yearly bonus of approximately $15,000. He also testified that his salary has increased each year by around 4% and that he expects to receive a raise the next year as well. James testified that he believes he should pay alimony to Vicki for the next several years and that it would be equitable for her to receive $1000 per month in alimony.

Pursuant to the divorce decree, the trial court, in addition to dividing the property according to the parties' stipulation, awarded alimony to Vicki in the amount of $1,546.48 each month for the first five years. After the expiration of the first five years, the decree provided that Vicki would receive 21% of James's net income for the next five years, after which she would receive 15% of his net income each month until her death, remarriage, or cohabitation. The decree defined "net income" as any compensation received by James, including bonuses and income from exercised stock options that mature or are granted post-divorce. James was required to prove his net income by providing copies of his W-2 each year. Vicki was also awarded $1000 in attorney's fees.

■ As a preliminary matter, we note that the record does not reveal that Vicki ever filed a complaint for divorce; rather, she filed a Complaint for Separate Maintenance in October 2001. James then filed an Answer to this complaint, along with a Counterclaim for Divorce, which he voluntarily withdrew at the divorce hearing in December 2002 when he also agreed to waive corroboration of grounds. While it has been held that it is error for the trial court to award a greater degree of divorce than sought by the plaintiff in the complaint, see Spencer v. Spencer, 275 Ark. 112, 627 S.W.2d 550 (1982), in the present case, neither party raises this issue or argues that the trial court erred in granting Vicki an absolute divorce. In fact, it is apparent from the transcript of the divorce hearing that both parties had agreed to a divorce and that they treated Vicki's Complaint for Separate Maintenance as a divorce complaint. The parties also stipulated to an equal division of marital property, and James even waived corroboration of grounds for divorce. Given that both parties consented to the hearing being one for an absolute divorce, we find no error in the trial court's grant of divorce to Vicki. See McKay v. McKay, 340 Ark. 171, 8 S.W.3d 525 (2000) (citing Ark. R. Civ. P. 15 and holding that issue of alimony, which was not pled but was tried by consent of the parties, would be treated as if it was raised in the pleadings). We further note that an adequate ground for divorce, eighteen months' separation, was proven at the hearing.

■ For his first point on appeal, James argues that the trial court erred in including his stock options as income for purposes of setting alimony because such an award circumvented Arkansas's restriction on the division upon divorce of non-vested employment benefits. The award of alimony is discretionary, and any such award will not be reversed on appeal in the absence of an abuse of discretion by the trial court. Davis v. Davis, 79 Ark. App. 178, 84 S.W.3d 447 (2002); Holoway v. Holoway, 70 Ark. App. 240, 16 S.W.3d 302 (2000). The purpose of alimony is to rectify the frequent economic imbalance in the earning power and standard of living of the divorced parties in light of the particular facts of each case. Anderson v. Anderson, 60 Ark. App. 221, 963 S.W.2d 604 (1998). The primary factors to be considered in determining whether to award alimony are the financial need of one spouse and the other spouse's ability to pay. Id. The trial court should also consider the following secondary factors: (1) the financial circumstances of both parties; (2) the amount and nature of the income,

both current and anticipated, of both parties; (3) the extent and nature of the resources and assets of each party; (4) the earning ability and capacity of both parties. *Anderson, supra; Davis, supra.* The trial court should consider the total income, from whatever source, of both parties in making an alimony determination. *Davis, supra.*

Citing *Holoway v. Holoway, supra,* James contends that the trial court's inclusion of his unvested stock options violates Arkansas law, which prohibits the division upon divorce of non-vested employment benefits because they are not considered to be marital property. James also cites *Belanger v. Belanger,* 276 Ark. 522, 637 S.W.2d 557 (1982), in which the supreme court reversed and remanded the trial court's award of lifetime alimony because the alimony award was used as a substitute for awarding the wife an interest in real estate that was nonmarital property. Because any stock options he may receive in the future are capable of being unilaterally terminated by Wal-Mart, his employer, without also terminating the employment relationship, James asserts that these future stock options are non-vested and are thus not divisible marital property. *See Day v. Day,* 281 Ark. 261, 663 S.W.2d 719 (1984) (holding that husband's interest in retirement plan was "vested" because it could not be unilaterally terminated by the employer without also terminating the employment relationship).

■ ■ We find that James's argument on this point is without merit. Contrary to his assertions, the trial court in this case did not purport to divide any future, non-vested employment benefits pursuant to the divorce decree. Rather, the trial court based the award of future alimony on a percentage of James's net income, including any bonuses or stock options that James receives in the future as part of the definition of his net income. It is clear from the decree that only vested and exercised stock options, as reported on his W-2 for that particular year, will be considered in the definition of James's net income. It was not error for the trial court to include stock options that may be exercised by James in the future as a part of his net income for alimony purposes, given that *all* sources of income must be considered in determining alimony. *Davis, supra.* The cases cited by James, *Holoway, supra,* and *Belinger, supra,* are distinguishable, as they involve an award of lifetime alimony in lieu of awarding an asset that was nonmarital and thus not properly divisible pursuant to a divorce. Therefore, we affirm on this point.

James next argues that the circuit court abused its discretion in awarding Vicki alimony that would only terminate upon her death, cohabitation, or remarriage. James does not assert on appeal that Vicki was not entitled to an award of alimony; rather, he argues that she should not have received a lifetime alimony award, given her relatively young age, lack of any medical problems, and her receipt of substantial financial assets pursuant to the divorce. He contends that the trial court's award should be reversed and remanded with instructions to award alimony for a fixed period of time.

In finding that Vicki should be awarded alimony, the trial court stated in its decree:

> The Court finds that the Plaintiff is entitled to said alimony after considering the needs of the Plaintiff and the Defendant's ability to pay. The Court further finds that pursuant to the factors announced in *Davis v. Davis*, 79 Ark. App. 178 (2002), that the Defendant possesses a far superior earning ability and capacity than the Plaintiff. Further, the Defendant is employed by Wal-Mart Stores, Inc. earning in excess of $100,000 per year, and has been employed by Wal-Mart throughout the entire marriage of the parties. The Plaintiff has remained at home as a housewife, and has no marketable employment skills. The Plaintiff anticipates perhaps working at a bookstore for minimum wage as her future employment but does not anticipate being able to earn even moderate income for herself. Therefore, the Court finds the award of alimony from the Defendant to the Plaintiff warranted.

The trial court in this case properly considered the factors to be used in determining an award of alimony and found that Vicki was entitled to a lifetime award. This award was not an abuse of discretion because, as noted by the trial court, Vicki remained at home throughout the majority of her twenty-five-year marriage to James, and she has not worked for the past twenty years, ever since the parties' child was born. She is forty-eight years old, and her only employment experience comes from jobs paying at or slightly more than minimum wage. Vicki does not have a college degree, and she testified that she did not think that her past college credits, from when she attended college more than twenty-five years ago, were still active. She also testified that she did not think she had the skills to return to college at her age. She testified that she would be qualified and would like to work in a bookstore, library, or school, but she did not anticipate being able to earn much at those jobs. She further stated that her monthly expenses totaled $1,713.17.

In addition to demonstrating Vicki's financial need for alimony, the evidence also showed that James has the ability to pay. Although James contends that Vicki received substantial financial assets pursuant to the divorce, the parties agreed to divide all marital property equally, and he received substantial assets as well. He has been employed by Wal-Mart for fifteen years and is currently earning in excess of $100,000 per year. James testified that he anticipates that he will continue to receive his bonus, stock options, and a salary raise in the next year.

■ In *Anderson v. Anderson, supra*, the trial court's award of alimony to the wife until five years after the parties' youngest child reached adulthood or until the wife's remarriage was found not to be an abuse of discretion where the wife was forty-three years old, the parties had been married for more than twenty years, she had few financial assets and little employment experience, and the husband earned in excess of $100,000 a year, while the wife testified that she anticipated earning between $10,000 and $18,000 per year. Similarly, in this case, the trial court did not abuse its discretion in awarding lifetime alimony to Vicki, given the evidence demonstrating her substantial need for alimony and James's ability to pay. Therefore, we affirm on this point as well.

Affirmed.

NEAL and VAUGHT, JJ., agree.