Robert SCOTT *v.* Rita SCOTT

CA 03-692 161 S.W.3d 307

Court of Appeals of Arkansas
Division II
Opinion delivered April 28, 2004

*Rieves, Rubens & Mayton,* by: *Kent J. Rubens,* for appellant.

*Orr, Scholtens, Willhite & Averitt, PLC,* by; *Chris A. Averitt* and *Jay Scholtens,* for appellee.

TERRY CRABTREE, Judge. Appellant and appellee were divorced in 2003 after twenty-nine years of marriage. In the decree, the trial court ruled that 1) appellant's disability policy was marital property, 2) appellee's interest in certain farmlands was not marital property, 3) appellee was not entitled to alimony, and 4) an account held jointly by appellant and his mother was not marital property. Appellant appeals from the first two rulings, and appellee cross-appeals from the latter two. We affirm in part and reverse and remand in part on both direct appeal and cross-appeal.

### The Disability Policy

Appellant began a dental practice in 1972. Shortly thereafter, he purchased a disability insurance policy. The policy was renewed each year, with premiums being paid out of the office account. As of 1992, the policy provided a basic monthly income benefit of $4,000 in the event that appellant became totally disabled due to sickness or accident.

In 1994, appellant became totally disabled by osteoarthritis in his hands, and he began drawing the $4,000-per-month benefit. He testified that his father and uncle both had the disease and further testified as follows:

Question: And I believe in your deposition you said that osteoarthritis is not the result of any injury you have received, is that right?

Answer: I don't know what it's the result of.

Question: Well, did you say earlier that you thought it was inherited because it ran in your family?

Answer: I think so, but whether or not — whether or not it was stress or injuries, handling forceps can make it any worse, I don't know the answer to that. And the doctors don't either, I don't think.

Question: Well, did you ever go to the doctor for an injury during the time you were practicing dentistry for an injury to your hand?

Answer: I don't think so. Huh-uh.

Question: So, to the best of your knowledge it's not due to an injury then?

Answer: To the best of my knowledge it's not.

Question: It's certainly not due to an on the job injury?

Answer: May be due to on the job stress and handling the instruments, I don't know. I really don't know the answer to that.

At the time of trial in November 2002, when he was age sixty, appellant said that he expected to continue drawing the disability benefit until he was sixty-five.

The trial court ruled that the policy was marital property and declared that each party would receive $2,000 per month, an equal split of the $4,000 monthly benefit. Appellant argues that the trial court erred in finding that the disability policy was marital property.

 We review domestic-relations decisions *de novo* on the record. *Frigon v. Frigon*, 81 Ark. App. 314, 101 S.W.3d 879 (2003). Although review is *de novo*, we will not reverse a finding of fact by the trial judge unless it is clearly erroneous. *Id.* In particular, we have recognized that a trial court's determination of whether certain property is marital property will not be reversed unless it is clearly erroneous. *O'Neal v. O'Neal*, 55 Ark. App. 57, 929 S.W.2d 725 (1996). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Frigon, supra.*

■ Under Arkansas law, property acquired during the marriage is marital property unless it meets one of the statutory exceptions contained in Ark. Code Ann. § 9-12-315 (Repl. 2002). Appellant argues that his disability benefits fall within that part of the statute that excepts "benefits received or to be received from a workers' compensation claim, personal injury claim, or social security claim when those benefits are for any degree of permanent disability or future medical expenses." Ark. Code Ann. § 9-12-315(b)(6). We disagree.

■ ■ Appellant does not argue that his disability benefits are in lieu of workers' compensation or social security claims. Further, it is apparent under our case law that the disability benefits are not for a "personal injury." In *Mason v. Mason*, 319 Ark. 722, 895 S.W.2d 513 (1995), the supreme court established a two-prong test to determine whether disability benefits are for a "personal injury" as contemplated by subsection (b)(6): 1) the claim must be for a degree of permanent disability or future medical expenses, and 2) the injury must be sustained while on the job or in consequence of a tortious act. *See also Skelton v. Skelton*, 339 Ark. 227, 5 S.W.3d 2 (1999). Appellant's disability benefits do not meet the second prong of this test. The trial court found, and the evidence supports a finding, that appellant's osteoarthritis is a congenital disease and was not sustained on the job or as the result of a tortious act. Further, even if appellant's work exacerbated his osteoarthritis, that would have no bearing where the osteoarthritis was the principal cause of the permanent disability. *See Mason, supra.* Thus, appellant's disability benefits do not meet the statutory exception.

■ Appellant also argues that disability benefits are a substitute for post-dissolution earnings and thus nonmarital. He cites several cases from other jurisdictions for this proposition, but two of those cases correctly recognize that Arkansas does not follow that line of thinking. *See Sherman v. Sherman*, 740 S.W.2d 203 (Mo. Ct. App. 1987); *Ciliberti v. Ciliberti*, 374 Pa. Super. 228, 542 A.2d 580 (1988). Arkansas takes the approach that a disability policy is a marital asset unless expressly excepted by the provisions of Ark. Code Ann. § 9-12-315(b). *See, e.g., Frigon v. Frigon, supra* (holding that a disability benefits contract was a marital asset and did not fall within the exception in section 9-12-315(b)(6)). Appellant tries to distinguish *Frigon* by arguing that, unlike the benefits-recipient there, his disability policy was purchased prior to marriage and thus, the benefits flowing from it are nonmarital.

Appellant cites no authority for this argument, and where an argument is not properly developed on appeal and not supported by convincing argument or authority, we will not address it. *Nationsbanc Mtg. Corp. v. Hopkins*, 82 Ark. App. 91, 114 S.W.3d 757 (2003). Further, the great majority of the premiums on the policy were paid during the marriage, and policy renewals were issued throughout the marriage. Moreover, the disability occurred during the marriage, a fact that was considered relevant in *Dunn v. Dunn*, 35 Ark. App. 89, 811 S.W.2d 336 (1991). We therefore see no reason to depart from our holding in *Frigon*, and we affirm the trial court's determination that appellant's disability policy was marital property.

## The Farmlands

Beginning in 1983 and continuing through 1989, appellee's father, Fremont Eason, executed six deeds to appellee and her two sisters that conveyed approximately 1,130 acres of farmland to them as tenants in common. The issue is whether these lands were gifts to appellee, in which case they would be excepted from the definition of marital property under Ark. Code Ann. § 9-12-315(b)(1), or whether they were purchased during the marriage, in which case they would be marital property. The trial court held that the lands were gifts, and appellant challenges that ruling as to four of the deeds.[1]

One of the deeds states that certain described land was conveyed to appellee and her sisters in exchange for $168,000, as evidenced by four promissory notes. Another deed states that land was conveyed to appellee and her sisters for a consideration of $18,000, as evidenced by a promissory note. The two remaining deeds recite a consideration of ten dollars. Appellant argues that, because these deeds contain on their faces a recitation of valuable consideration paid for the land, the land cannot be considered a gift and should instead be considered property purchased during the marriage.

A sale is a contract by which one party transfers the ownership of property to another for a price; a gift is a voluntary transfer of property, without valuable consideration, to another.

---

[1] Two of the deeds recite that the land was conveyed in consideration for one dollar and "love and affection." Appellant conceded at oral argument that these two deeds represent gifts.

*Cottrell v. Beard,* 69 Ark. App. 87, 9 S.W.3d 568 (2000). Consideration is the chief distinction between a gift and a sale. 38 Am. Jur. 2d *Gifts* § 2 (2d ed. 1999). At trial, there was evidence on both sides of this question. Fremont Eason said that he intended to make a gift of the land, that his daughters never paid him for the land, and that he simply forgave their debt on it. There is no evidence that he ever received any money in exchange for the land. Appellee testified that it was her understanding that the transfers of land were for the purpose of reducing the estate tax burden on her father's property and that the land was a gift to her. On the other hand, the recitation of consideration in the deeds is evidence that a sale was intended. *See generally* 38A C.J.S. *Gifts* § 8 (1996). Further, appellant argues that Mr. Eason's testimony was not credible because he pled guilty to tax fraud regarding these transactions.

Because there is conflicting evidence as to whether the parties intended a gift or a sale of these lands, we defer to the trial court's finding that a gift was intended. That finding is supported by evidence that Mr. Eason intended to make a gift; that appellee considered the land a gift; that no money changed hands from appellee to her father in exchange for the property; and that, even though consideration was recited in the deeds, Mr. Eason forgave the debt. *See In re Marriage of Wierman,* 130 Wis. 2d 425, 387 N.W. 2d 744 (1986) (involving a similar situation where the donor-father forgave a debt and it was considered a gift). Further, two deeds recited only nominal consideration, and it has been recognized that such a recitation does not destroy the transaction's character as a gift. 38A C.J.S. *Gifts* § 8 (1996). Also, this was a transaction among family members so it would not be unreasonable to conclude that a gift was being made. Finally, although appellant argues that Mr. Eason's testimony was not credible, the trial court is in the best position to judge credibility of witnesses. *Utley v. City of Dover,* 352 Ark. 212, 101 S.W.3d 191 (2003).[2]

---

[2] In any event, the record in this case does not make it clear whether the tax fraud case referred to by appellant involved these particular transactions. We therefore decline to adopt appellant's argument that the clean hands doctrine should prevent appellee from asserting that the land was a gift.

In light of the foregoing, we affirm the trial court's finding that the farmlands deeded to appellee by her father were a gift and thus exempt from the definition of marital property.

Two other land transactions are also at issue. Both are undeniably purchases made by appellee during the marriage, but the trial court found that the purchases were made with proceeds from the gifted property and thus exempt from division as marital property under Ark. Code Ann. § 9-12-315(b)(7). We reverse the trial court's ruling on this point.

In approximately 1991, appellee and one of her sisters, Angela Waldrip, purchased the third sister's interest in the land that had been gifted to them. Their purchase was financed by a $145,000 mortgage at the Federal Land Bank. Appellant was a party to the mortgage, as evidenced by his signature thereon. The evidence at trial showed that appellee made payments toward satisfaction of the mortgage by four checks written to the Federal Land Bank for approximately $55,000. One of those checks for $6,000 was written on appellant and appellee's joint account, while the other three were written on appellee's solo account; the $6,000 from the joint account was placed there by appellee after withdrawing it from another of her own accounts that she shared with her son, in which she had deposited farm income. Appellee testified that the four payments totaling $55,000 completely paid off her purchase of her sister's property.

Because this land was acquired during the marriage, it was appellee's burden to show that it was not marital property. *See Davis v. Davis*, 79 Ark. App. 178, 84 S.W.3d 447 (2002). We do not believe that she met that burden. Appellant was a party to the mortgage used to acquire this property. Thus, the property was not acquired solely by appellee's funds but by appellant's participation in the financing of the acquisition. Further, although appellee showed that she paid $55,000 toward the purchase of this property, there is no evidence that the $145,000 mortgage has been extinguished. We therefore conclude that this property was not proven to be nonmarital, and we reverse the trial court as to this parcel.

Appellee also purchased land during the marriage from a man named Turpin. The deed from Turpin to appellee, her sister Angela, and Angela's husband, recites that the land was conveyed in exchange for consideration of $403,000, of which $200,000 was to be financed by Turpin. Appellee proved that she wrote checks

totaling approximately $32,000 toward this purchase. Two of these checks came out of the joint account under the same circumstances as the $6,000 check discussed above; the amounts were deposited there from another account and immediately disbursed. The other payments were made from appellee's solo account.

The deed calls for a cash payment of $203,000 and a note for $200,000, to be paid in ten annual installments; however, there is no evidence as to the source of appellee's part of the down payment, nor is there evidence of how appellee paid the other $18,000 that she would have owed after paying $32,000 on the note. We do not believe that appellee has met her burden of showing that the Turpin property was acquired strictly with proceeds derived from a gift and thus exempt from the definition of marital property. We therefore reverse as to this parcel.

### Alimony

Because we have reversed the property division in a significant way, we also reverse to allow the trial court to reconsider the lack of alimony awarded, although we make no ruling as to whether or not alimony should be awarded. Alimony and property division are complimentary devices that a trial judge uses to make the dissolution of a marriage as equitable as possible. *Cole v. Cole,* 82 Ark. App. 47, 110 S.W.3d 310 (2003). Therefore, it is fitting that the trial court may revisit this issue on remand if the situation warrants.

### Jointly-Held Account

In 1996, four years before appellee filed for divorce, appellant opened a joint account with his mother in which he placed $64,000. The source of the funds was the sale of marital stock. The sale was reflected on the couple's joint tax return, so appellee knew of the sale. However, she did not know that the money went to this joint account.

Appellant claimed that the money was placed in the account because he was repaying his parents for sending him through dental school. His mother's testimony confirmed this, and appellee acknowledged that appellant had once stated that he planned to pay his parents back.

The trial court found that the account was nonmarital. Appellee argues that the conveyance to appellant's mother was a

fraudulent transfer, and she points to several factors that belie appellant's claim that the account was established to pay back his parents. First, she observes that appellant listed the account on his affidavit of financial means. However, appellant testified that he put the amount on the affidavit out of an abundance of caution because he thought he might have to account for it. Appellee also points out that, in appellant's answers to interrogatories, he stated that he had made a "gift" of "$62,000" to his mother in 1996. Appellant explained this discrepancy by saying that he was not splitting hairs over terminology and, despite his calling it a gift, he still considered it repayment of a loan. Finally, appellee cites evidence that appellant spent money from the account. However, appellant testified that he always sought his mother's permission to access the account, and his mother testified likewise.

To prove a fraudulent transfer, appellee was required to show that the transfer was made with the specific intent to deprive her of her interest in the property. *Skokos v. Skokos*, 332 Ark. 520, 968 S.W.2d 26 (1998). As there was conflicting evidence of appellant's intent, we cannot say that the trial court's finding that the transfer was not fraudulent is clearly erroneous. We also note that the trial court was persuaded that appellant did not attempt to hide marital property because the account was opened four years before appellee filed for divorce.

Affirmed in part and reversed and remanded in part on direct appeal; affirmed in part and reversed and remanded in part on cross-appeal.

ROBBINS and NEAL, JJ., agree.