2009 Ark. App. 208

**Ivan L. EVTIMOV, Appellant,**

v.

**Mariofanna G. MILANOVA, Appellee.**

**No. CA 08–36.**

Court of Appeals of Arkansas.

March 18, 2009.

Ables Law Firm, P.A., by: Lisa Jones–Ables, Little Rock, for appellant.

Friday, Eldredge & Clark, by: Betty J. Hardy, Little Rock, for appellee.

KAREN R. BAKER, Judge.

Appellant Ivan Evtimov appeals his decree of divorce from appellee Mariofanna Gueorgieva asserting three points of error: (1) The trial court erred in granting appellee a divorce where appellant presented insufficient evidence regarding residency and separation; (2) The trial court erred in refusing to award appellant alimony despite the significant difference in income and appellant's limitation on future employment; (3) The trial court erred by failing to equally divide the marital property of the parties. We find no error and affirm.

Appellant Ivan Evtimov and appellee Mariofanna Gueorgieva were married in Bulgaria on or about December 19, 2001.

Shortly after they were married, the couple moved to Little Rock, Arkansas, where appellee began working for the University of Arkansas at Little Rock. Appellee filed for a divorce on March 27, 2006, and a hearing was held on July 24, 2007. Appellant did not challenge the divorce; however, he contended that he should receive a portion of the tax refund from the last year of marriage, sought equity in the marital home, and requested spousal support.

In 2002, the parties purchased a Toyota Camry, which at the time of the hearing was in appellant's possession and worth approximately $11,000. Appellee testified that the parties purchased a house in 2004, that the initial purchase of the home was $324,900, and that the parties owed slightly less on the house than it was worth. The testimony and evidence reflected that appellee had retirement accounts totaling $92,194 and marital debts totaling $32,700 excluding the home mortgage.

Appellee also testified that appellant contributed nothing to her education as she received her position prior to the parties' marriage. She, however, had contributed to his education, spending a great deal of money on many language and business courses for him during the marriage. Despite her expenditures and efforts to assist appellant in obtaining satisfactory work, and her expectations that he would contribute to the marriage financially, he continued to refuse to work. In addition to his failure to contribute to the marital assets, appellee explained that appellant had wasted marital assets, particularly by destruction to the marital home and incurring marital debt. She also explained that appellant had used her checking account without her authorization, asserting that he was stealing from her.

Appellee's daughter reaffirmed appellant's lack of contribution to the marital assets. She added that appellant had many private teachers in addition to the English courses he took at the University. When he was enrolled in English classes, he would ask her for help in writing essays and with grammar; however, despite the fact that she helped him "a lot" and made herself available to assist him in learning the language, she could not characterize him as "eager" to learn the English language.

At the hearing, appellant listed a variety of ideas that either appellee or he had suggested as avenues of income for appellant. Appellant contended that he was unable to work for two months of those years of marriage due to an infection in his leg. Appellant contradicted appellee's testimony that he did not contribute by stating that he sometimes gave money to her, but many times she rejected receiving any money from him. He also disputed her testimony that he had destroyed the house; instead, he asserted that he was attempting to maintain the house by doing yard and electrical work to avoid her using maintenance people. As for the allegations of his stealing, he categorically denied that he stole from her. His explanation was that he was using her checking account to pay some of his expenses. While appellee opined that appellant was capable of working, appellant insisted that his limitations with the English language restricted his earning capacity. In his affidavit of financial means, he indicated that he netted $339.41 biweekly with expenses of $1070 a month.

The trial court found that appellant had not contributed to the marital household. On appeal, appellant does not challenge that finding. Instead, he challenges the trial court's denial of alimony arguing that it was error to deny his requested alimony based upon the difference in income and future earning capacity.

While the trial court did not award alimony, he did order appellee to pay appellant an amount equal to one-half of her retirement fund, minus one-half the value of the couple's consumer debt and one-half the value of the car awarded to appellant, in the form of a monthly payment in the amount of $470 for sixty months at six percent interest. The distribution of assets to appellant totaled $24,000, and the court placed all payment of the debt obligation upon appellee.

### Residency

■ Appellant's first assertion of error is that the trial court erred in granting appellee a divorce where appellant presented insufficient evidence regarding residency and separation. To obtain a divorce, a plaintiff must prove residency in the state by either herself or the defendant for sixty days before the commencement of the action and residency in the state for three full months before the final judgment granting the decree of divorce. Ark.Code Ann. § 9–12–307(a)(1)(A) (Repl. 2006).

■ Residency must be proven and corroborated in every instance. Ark.Code Ann. § 9–12–306(c)(1) (Repl.2006); *Hodges v. Hodges*, 27 Ark.App. 250, 770 S.W.2d 164 (1989). If a trial court renders a divorce decree without obtaining sufficient proof and corroboration of residency, the decree has been entered without jurisdiction. *Araneda v. Araneda*, 48 Ark.App. 236, 894 S.W.2d 146 (1995). We recognize that, where it is plain that there is no collusion, corroboration of residency need only be slight. *Hodges, supra.* But, by the same token, residency for the required period is jurisdictional and, dealing as it does with the power and right of the trial court to act, corroborating evidence of residency should not be speculative and vague in scope. *Araneda v. Araneda, supra.*

Proof of residency must be corroborated in every action for divorce regardless of the defendant's admission. Ark.Code Ann. § 9–12–306(b) (Repl.2006); *Hodges, supra.* The purpose of the rule requiring corroboration is to prevent the procuring of divorces though collusion, and when it is plain that there is no collusion, the corroboration of residence only needs to be slight. *Hodges, supra.*

The evidence of the parties' residence sufficiently corroborates residence in this case. The record contains appellee's W–2 statements from 2002–2006 with each listing a Little Rock address as the employee's residence, the notarized deed to the house which was filed in 2004, and a letter enclosing the "Owner's Policy of Title Insurance" sent to appellee's Little Rock address and dated April 7, 2005. As for evidence of the separation, a witness for appellee testified that appellant lived for six to eight months by himself, and specifically that they had lived separate and apart since the filing of the petition. The petition was filed on March 27, 2006. Paragraph four alleged that the parties had been living separate and apart since January 9, 2006, and appellant admitted that allegation in his answer. Accordingly, the trial court did not err in finding residency and adequate evidence of separation.

### Alimony

■ Neither did the trial court err in refusing to award alimony. A trial judge's decision regarding alimony is a matter that lies within his sound discretion and will not be reversed on appeal absent an abuse of that discretion. *See Hiett v. Hiett*, 86 Ark.App. 31, 158 S.W.3d 720 (2004); *Delacey v. Delacey*, 85 Ark.App. 419, 155 S.W.3d 701 (2004). An abuse of discretion means discretion improvidently exercised, *i.e.*, exercised thoughtlessly and without

due consideration. *Southwestern Bell Yellow Pages, Inc. v. Pipkin Enterprises, Inc.,* 359 Ark. 402, 198 S.W.3d 115 (2004) (citing *Arnold v. Camden News Publ'g Co.,* 353 Ark. 522, 110 S.W.3d 268 (2003)). Our supreme court and this court have emphasized in the past that the circuit court is in the best position to view the needs of the parties in connection with an alimony award. *See Taylor v. Taylor,* 369 Ark. 31, 250 S.W.3d 232 (2007).

▓▓▓ The purpose of alimony is to rectify economic imbalance in the earning power and the standard of living of the parties to a divorce in light of the particular facts of each case. *Id.* The primary factors that a court should consider in determining whether to award alimony are the financial need of one spouse and the other spouse's ability to pay. *Id.* The trial judge should also consider the following secondary factors: (1) the financial circumstances of both parties; (2) the couple's past standard of living; (3) the value of jointly owned property; (4) the amount and nature of the income, both current and anticipated, of both parties; (5) the extent and nature of the resources and assets of each of the parties; (6) the amount of each party's spendable income; (7) the earning ability and capacity of both parties; (8) the property awarded to each party; (9) the disposition of the homestead or jointly owned property; (10) the condition of health and medical needs of the parties; (11) the duration of the marriage. *Id. See also Ellis v. Ellis,* 75 Ark.App. 173, 57 S.W.3d 220 (2001).

▓▓▓ We cannot say that the trial judge abused his discretion in denying appellant's request for alimony. The crux of appellant's argument is that appellee should pay alimony because she can due to her significantly higher income. While the trial court did not award alimony, it did mandate a present distribution of appellee's retirement account to be paid over a five year period with interest. Alimony and property divisions are complementary devices that a trial judge employs to make the dissolution of a marriage as equitable as possible. *See Davis v. Davis,* 79 Ark. App. 178, 84 S.W.3d 447 (2002). *See also* Janet Flaccus, Domestic Relations Contempt Orders, and the Bankruptcy Automatic Stay, Property of the Estate and Concurrent Jurisdiction, 2004 Ark. L. Notes 41, 50 (2004) (stating "It should be recalled that under domestic relations law an equitable division of property is a way of avoiding a need for temporary alimony").

Appellee does not challenge the immediate distribution of her retirement, nor the interest awarded on the five-year payment plan. Accordingly, the appropriateness of that division is not at issue in this case. It is, however, appropriate for this court to consider that the distribution resembles an award of rehabilitative alimony, and that appellant received the money without the corresponding benefit to appellee of a shifting of income for tax purposes. In making the distribution, the trial court noted that it believed the current distribution was more equitable in these circumstances than to have appellant wait until appellee retired in the future. The trial judge specifically stated from the bench that this distribution addressed appellant's immediate need for cash.[1] The trial judge

---

1. Despite the trial court's immediate distribution of appellant's interest in appellee's retirement and award of accruing interest, the dissenting judges assert that this court should find that the trial court abused its discretion in failing to grant alimony. Neither dissent cites a case with factual similarities to support the award of alimony. Furthermore, neither dissent cites a case supporting the contention that providing appellant monthly

also specifically found appellant less than forthcoming and did not afford him much credibility on the debt and income issues.

In reaching our decision, we are mindful that the award of alimony is not mandatory, but is instead discretionary, and the trial court's decision regarding any such award will not be reversed absent an abuse of discretion. *Powell v. Powell*, 82 Ark.App. 17, 110 S.W.3d 290 (2003). Discretion and flexibility are critical to the trial court's ability to make the dissolution of the marriage as equitable as possible. As we explained in *Mitchell v. Mitchell*, 61 Ark.App. 88, 964 S.W.2d 411 (1998), neither this court, nor the supreme court, has ever attempted to reduce the amount of alimony to a mathematical formula. Presumably, it has been thought that the need for flexibility outweighs the corresponding need for relative certainty. *Id.* In setting the amount of alimony, the trial court may consider a range of acceptable alternatives. *Id.*

Here, the trial court ordered an immediate distribution of appellant's interest in appellee's retirement that addressed appellant's present need for liquid funds. The parties in this case were married for less than five years prior to their separation, appellant presented no evidence that his earning capacity was reduced because he relinquished rights or opportunities in furtherance of the marriage, and appellee presented evidence that appellant's failure to contribute to the marriage combined with his abusive behavior were the reasons for the marriage's failure. The evidence showed that appellee had obtained her position prior to the marriage negating any equitable claim that appellant's services in

the home allowed appellee to pursue and obtain the credentials that provided her with a higher earning capacity. Rectification of economic imbalances is not necessarily appropriate when the marriage relationship did not influence the imbalances in earning capacity.

Furthermore, in the context of rehabilitative alimony, it is clear that the standard of living to be maintained is the standard achieved by the marriage. Our courts initially recognized rehabilitative alimony in 1990, when this court considered *Bolan v. Bolan*, 32 Ark.App. 65, 796 S.W.2d 358 (1990). Rehabilitative alimony is alimony that is payable for a short, specified duration of time. *See Bolan*, 32 Ark.App. at 67–68 n. 1, 796 S.W.2d at 360 n. 1. The primary purpose of rehabilitative alimony is to afford the recipient a specific period of time in which to become self-supportive:

> Generally, the purpose of rehabilitative maintenance is to allow the recipient spouse to become self-supporting; its purpose is to aid the former spouse as he or she transitions back into the workplace and self-sufficiency. Rehabilitative alimony enables the receiving spouse to establish the capacity for self-support commensurate with the standard of living established during the course of the marriage, through the redevelopment of previous skills or the provision of training necessary to develop new skills. The goal of self-sufficiency must, however, be balanced against the realistic likelihood that the spouse will be able to attain a level of support comparable to the standard of living enjoyed during the marriage, especially

funds for a period of five years to address appellant's need for immediate cash demonstrates that the trial court abused its discretion by acting thoughtlessly and without due consideration in denying alimony. *South-*

*western Bell Yellow Pages, Inc. v. Pipkin Enterprises, Inc.*, 359 Ark. 402, 198 S.W.3d 115 (2004) (citing *Arnold v. Camden News Publ'g Co.*, 353 Ark. 522, 110 S.W.3d 268 (2003)).

where the spouse has not been in the work force for a long period of time. An award of rehabilitative alimony is also designed to permit former spouses to develop their own lives free from obligations to each other. Rehabilitative alimony is a "bridge-the-gap" measure to aid the recipient spouse in making the transition from married life to being single.

Other purposes rehabilitative alimony is intended to serve include the following: to give the paying spouse some predictability concerning financial obligations, to prevent possible further court appearances by permitting the court to take into consideration reasonably foreseeable changes in the recipient spouse's circumstances to encourage the recipient spouse to find employment or complete education or training leading to employment.

AMJUR DIVORCE § 760 (footnotes omitted).

We cannot say that the trial court abused its discretion in denying alimony when appellant does not challenge the trial court's finding the appellant provided no contribution to the marital assets and evidence indicated that he merely depleted marital resources. Although he asserted that his earning capacity was limited by his poor English skills, the evidence established that appellee provided ample opportunity for him to learn the language through private tutoring and university classes. Whether appellant's professed inability to communicate effectively in English was a result of disinterest or inability, nothing in the record indicates how further classes would improve his English skills in order to increase his earning power. Furthermore, there was no testimony explaining how his limited English skills would affect his earning capacity should he return to his home country.

Likewise, we find no error in the trial court's division of marital property. The trial judge's distribution of property balances in appellant's favor with the property distribution and the allocation of debt. Alimony and property divisions are complementary devices that a trial judge employs to make the dissolution of a marriage as equitable as possible. *See Davis v. Davis*, 79 Ark.App. 178, 84 S.W.3d 447 (2002). A judge's decision to allocate debt to a particular party or in a particular manner is a question of fact and will not be reversed on appeal unless clearly erroneous. *Ellis v. Ellis*, 75 Ark.App. 173, 57 S.W.3d 220 (2001). The allocation of debt is an essential issue to be resolved in a divorce case, *id.*, and the overall distribution of property must be considered in that allocation. *See Boxley v. Boxley*, 77 Ark. App. 136, 73 S.W.3d 19 (2002).

In this case, the division of property addressed any inequities without an award of alimony. This court reviews division of marital property cases *de novo*. *Glover v. Glover*, 4 Ark.App. 27, 627 S.W.2d 30 (1982). The trial court has broad powers to distribute property in order to achieve an equitable distribution. *Keathley v. Keathley*, 76 Ark.App. 150, 61 S.W.3d 219 (2001). The overriding purpose of Arkansas Code Annotated section 9–12–315 (Repl.2002) is to enable the court to make a division of property that is fair and equitable under the specific circumstances. *Id.* Arkansas Code Annotated section 9–12–315 provides that marital property is to be divided equally unless it would be inequitable to do so. *Harvey v. Harvey*, 295 Ark. 102, 747 S.W.2d 89 (1988). If the property is divided unequally, then the court must give reasons for its division in the order. Ark.Code Ann. § 9–12–315(a)(1)(B) (Repl.2002); *Harvey v. Harvey, supra.* The code also provides a

list of factors the court may consider when choosing unequal division. Ark.Code Ann. § 9–12–315(a)(1)(A)(i)–(ix) (Repl.2002). This list is not exhaustive.

 Arkansas Code Annotated section 9–12–315 does not compel mathematical precision in the distribution of property; it simply requires that marital property be distributed equitably. *Creson v. Creson*, 53 Ark.App. 41, 917 S.W.2d 553 (1996). The trial court is vested with a measure of flexibility in apportioning the total assets held in the marital estate upon divorce, and the critical inquiry is *how the total assets are divided*. *Id.* (Emphasis added.) These broad powers, under the statute, include the distribution of all property in divorce cases, marital and non-marital, in order to achieve an equitable distribution. *Id.*

Under the facts presented in this case, we find no error in the trial court's distribution of property. A trial judge's unequal division of marital property will not be reversed unless it is clearly erroneous. *Cole v. Cole*, 89 Ark.App. 134, 201 S.W.3d 21 (2005). The trial court in this case specifically found that any sale of the marital residence would result in a deficiency to which appellant could not contribute. The trial court accordingly awarded the residence, which was deeded to appellee in her name only, to appellee as her sole and separate property, free and clear of any claims by appellant. None of the debt obligation for the residence was allocated to appellant. While this may have resulted in an unequal distribution, we cannot say that the division of the total assets and debt allocation was clearly erroneous and inequitable toward appellant.

Affirmed.

VAUGHT, C.J., MARSHALL and HENRY, JJ., agree.

HART and ROBBINS, JJ., dissent.

HART, J., dissenting.

Prior to today's majority opinion, our law was so well settled as to be axiomatic that division of marital property and the award of alimony were "complimentary devices that a trial judge employs to make the dissolution of a marriage as *equitable as possible.*" (Emphasis supplied.) *Harvey v. Harvey*, 298 Ark. 308, 766 S.W.2d 935 (1989); *Boyles v. Boyles*, 268 Ark. 120, 594 S.W.2d 17 (1980); *Ferguson v. Ferguson*, 251 Ark. 585, 473 S.W.2d 869 (1971); *Scott v. Scott*, 86 Ark.App. 120, 161 S.W.3d 307 (2004); *Cole v. Cole*, 82 Ark.App. 47, 110 S.W.3d 310 (2003): *Davis v. Davis*, 79 Ark.App. 178, 84 S.W.3d 447 (2002); *Mearns v. Mearns*, 58 Ark.App. 42, 946 S.W.2d 188 (1997) (overruled on another point of law); *Tortorich v. Tortorich*, 50 Ark.App. 114, 902 S.W.2d 247 (1995). Now the majority has sanctioned trial courts to use unequal property settlements *and* the denial of alimony as a one-two punch.

It is not clear where the majority has acquired the authority to overrule cases from our supreme court, but I note that hitherto, it was settled law that the primary factors to be considered in the award of alimony were the needs of the spouse requesting alimony and the other spouse's ability to pay. *See, e.g., Mulling v. Mulling*, 323 Ark. 88, 912 S.W.2d 934 (1996). It was uncontroverted at the hearing that Ms. Milanova's financial resources were many times greater than Mr. Evtimov's, and that despite working two jobs, he was struggling to get by. The majority's ratification of the trial court's so-called finding that "appellant provided no contribution to marital assets" is no justification for denying alimony to Mr. Evtimov.

Again, it was, at least prior to today's opinion, black-letter law that the purpose

of alimony is to rectify, insofar as is reasonably possible, the frequent economic imbalance in the earning power and standard of living of the divorced husband and wife. *See, e.g., Mitchell v. Mitchell,* 61 Ark.App. 88, 964 S.W.2d 411 (1998). I find it ironic that the majority relies on *Mitchell* for the proposition that it need not reduce the amount of alimony to a mathematical formula. In the first place, that is precisely what the court of appeals did in that case.[2] But more importantly, we are not in disagreement over the exact dollar amount of alimony, but rather whether it should be awarded at all. I submit that by any calculation, mathematically certain or otherwise, it was error not to award alimony.

While I concede that the decision to award alimony and divide marital property is left to the discretion of the trial judge, I lament that the majority has chosen to define "discretion" as "largess." Perhaps it is time that the majority be reminded that *judicial discretion*

> means discretion bounded by rules and principles of law, and not arbitrary, capricious, or unrestrained. It is not the indulgence of judicial whim, but the exercise of judicial judgment, based on facts and guided by law or the equitable decision or what is just and proper under the circumstances. It is legal discretion to be exercised in discerning the course prescribed by law and is not to give effect to the will of the judge, but to that of the law. . . . A liberty or privilege to decide what is fair and equitable under the peculiar circumstances of the particular case, guided by the spirit and principles of the law.

Black's Law Dictionary 323 (6th ed. 1990). Accordingly, in this case, the trial court had the authority to make a property award in lieu of alimony, *Ferguson, supra,* or could award alimony to compensate a party for an unequal property distribution, *Harvey, supra,* but not both deny alimony and give Mr. Evtimov less marital property. That would clearly be an erroneous application of law, which is a manifest abuse of discretion. *See Hall v. Kingsland School Dist.,* 56 Ark.App. 110, 938 S.W.2d 571 (1997).

Affirming this manifestly incorrect trial court decision is not justified by the majority's resort to fact finding. I am not sure which is the more objectionable: that they made a mistake of law in that they endeavored to do it at all, *O'Dell v. Rickett,* 92 Ark.App. 364, 214 S.W.3d 301 (2005) (holding that the appellate court will not find a fact that was not found below as that would be an intrusion into the province of the trial court), or that they made numerous mistakes of fact when they made these findings so poorly. Regarding the latter point, the majority states that Ms.

---

2. I quote the following from *Mitchell,* just to illustrate my point:

> [Mr. Mitchell's] gross income at the time of trial was approximately $129,000.00 per year with a net take-home pay of $83,000.00. Mrs. Mitchell has a master's degree in food and nutrition and has worked as a hospital dietician. Since the birth of the parties' daughter, Mrs. Mitchell has stayed at home and earned approximately $1,300.00 per year. At the time of the divorce she was not employed. During the pendency of the divorce, Mrs. Mitchell received $3,000.00 per month as support

> for herself and her daughter. At trial she submitted a list of expenses totaling $3,700.00 per month. This included anticipated future expenses which the chancellor declined to consider, leaving a total of $2,800.00 as the monthly expenses for Mrs. Mitchell and the child. . . . After considering all the appropriate factors, we conclude that the amount of alimony awarded was excessive. Under these circumstances, and on de novo review, we may set the amount of alimony. . . . In the case at bar we find that alimony should be set at $2,100.00 per month.

Milanova obtained her "position" prior to the marriage, which, they opine without citation of authority, negates "any equitable claim" that appellant's services in the home allowed appellee to pursue and obtain the credentials that provided her with a higher earning capacity. This fact finding does not counter an argument that Mr. Evtimov makes, and while I am loathe to engage in the same practice, I feel compelled to point out that while Ms. Milanova obtained her credentials prior to her marriage, her career flourished while she was in the salutary state of matrimony.

No less infirm is the majority's finding that Mr. Evtimov somehow benefitted from not having to pay a portion of the indebtedness on the marital residence that Ms. Milanova was awarded as her sole property, not to mention all the furnishings contained within its 3014 square feet and the fact that she was saved the many thousands of dollars in moving expenses if she was required to vacate the premises. This finding is particularly curious in light of the fact that in *Boyles v. Boyles, supra,* it is one of the enumerated factors that a trial court should consider in deciding whether alimony should be awarded.[3] Indeed, the only factor promulgated in *Boyles* that weighs against an award of alimony is the duration of the marriage. But again, even if the trial judge decided that alimony was not warranted, it was still not equitable to award him a lessor share of the marital property.

With breathtaking legerdemain, the majority attempts to obscure the fact that equity and statutory law requires that Mr. Evtimov receive *both* an equal share of the marital property, *see* Arkansas Code Annotated section 9–12–315 (Repl.2008), and alimony, *see* Arkansas Code Annotated section 9–12–312 (Repl.2008), by characterizing the unequal distribution of marital property into something that "resembles" an award of rehabilitative alimony. It ascribes this patently unsound decision to the trial court's recognition of Mr. Evtimov's "immediate need for cash." It should be obvious that Mr. Evtimov would not have an "immediate need for cash" if he received alimony. Again, we must confront that black-letter law that the primary considerations for an award of alimony is the *needs* of the spouse requesting alimony and the other spouse's ability to pay. *See, e.g., Mulling v. Mulling, supra.* The fact that Mr. Evtimov was given distribution of his less than equal share of marital property in monthly installments is rendered no less unpalatable by the majority's conclusion that Ms. Milanova incurred some adverse tax consequence. This conclusion is neither supported by the record or our tax laws.

Despite the majority's efforts to denigrate Mr. Evtimov, he did not engage in any conduct that would justify giving him a lesser share of the marital assets.[4] Although he was unsuccessful in his business

3. The factors referred to by *Boyles,* are: (1) the financial circumstances of both parties; (2) the couple's past standard of living; (3) the value of jointly owned property; (4) the amount and nature of the parties' income, both current and anticipated; (5) the extent and nature of the resources and assets of each of the parties; (6) the amount of income of each that is spendable; (7) the earning ability and capacity of each party; (8) the property awarded or given to one of the parties, either by the court or the other party; (9) the disposition made of the homestead or jointly owned property; (10) the condition of health and medical needs of both husband and wife; (11) the duration of the marriage; (12) the amount of child support.

4. In *Russell v. Russell,* 275 Ark. 193, 628 S.W.2d 315 (1982), the Arkansas Supreme Court deleted the relative fault of the parties as a factor considered by the court with regard to alimony.

ventures, efforts that he undertook with the express agreement, if not insistence, of Ms. Milanova, there was absolutely no evidence that he engaged in the kind of misconduct that has hitherto supported an unequal distribution of the marital estate. *Cf. Stover v. Stover,* 287 Ark. 116, |₁₈696 S.W.2d 750 (1985) (affirming unequal division where wife attempted to have her husband killed); *Keathley v. Keathley,* 76 Ark.App. 150, 61 S.W.3d 219 (2001) (affirming an unequal distribution where the husband gambled and fraudulently obtained credit cards on which he charged over $100,000); *Forsgren v. Forsgren,* 4 Ark.App. 286, 630 S.W.2d 64 (1982) (affirming unequal distribution of stock where wife excessively consumed alcohol and drugs resulting in massive medical bills).

Accordingly, what this case all boils down to is the majority ratifying the argument that Ms. Milanova made to the trial court: She made the money so she should get to keep it. I submit that this holding will bring about consequences that the majority most certainly did not intend.

ROBBINS, J., joins.

ROBBINS, J., dissenting.

While I agree with the points made by Judge Hart in her dissent, I write separately to suggest that the trial court's decision, and our court's affirmance, evinces an unacceptable gender bias. Consider the following scenario:

> Dr. John Doe and his wife Jane Doe reside and are married in Bulgaria. Soon after their marriage, they relocate to Little Rock, Arkansas, where Dr. Doe is employed as a professor at UALR. Although Mrs. Doe struggles to learn to speak English and does not have a job outside their home, she works at main-

taining their $300,000 residence in west Little Rock. Four years after settling in Little Rock the parties separate and Dr. Doe sues for divorce. Dr. Doe remains in the home and Mrs. Doe lives either in her car or with a friend. The decree of divorce awards the marital home, subject to the mortgage debt, and all furnishings to Dr. Doe. The rest of the marital assets are divided fairly evenly. Mrs. Doe's request for alimony is denied, notwithstanding that Dr. Doe's income approximates $110,000 per annum, while Mrs. Doe's two part-time jobs provide her with an income of approximately $400 to $500 biweekly at best. Mrs. Doe appeals.

Upon these facts, would our court hesitate to find that the trial court abused its discretion|₁₉by not at least ordering rehabilitative alimony in some amount? I submit that we would not. However, with a reversal of gender to comport the scenario to the facts of the appeal before us, we not only hesitated, we affirmed the trial court's denial of alimony. This is wrong. The statutory authority for an award of alimony was rendered gender-neutral by Acts 1979, No. 705.[5] We should be evenhanded in our treatment of divorce litigants who navigate the justice system. I would reverse.

HART, J., joins in this dissent.

---

5. *See* Ark.Code Ann. § 9–12–312 (Repl.2008).