Carole G. BOLAN *v.* Robert M. BOLAN

CA 90-29                                    796 S.W.2d 358

Court of Appeals of Arkansas
Division II
Opinion delivered October 10, 1990

*Baim, Gunti, Mouser, DeSimone, Robinson & Kizer*, by: *Maxie G. Kizer*, for appellant.

*Bart Mullis*, for appellee.

JUDITH ROGERS, Judge. The parties to this action were divorced after six years of marriage by decree of April 25, 1989. The chancellor deferred rendering a decision as to the division of marital property, and in an opinion dated September 13, 1989, the chancellor set out his findings with regard to the property issues. Pursuant to the opinion, an amended decree was entered on October 6, 1989. It is from the amended decree that appellant brings this appeal.

In seeking reversal, appellant raises the following three issues: (1) the chancellor erred in denying rehabilitative alimony; (2) the chancellor erred in the method he used to value appellee's C.P.A. practice and in finding that the firm had decreased in value during the marriage; and (3) the chancellor erred in awarding the parties' dog to the appellee. We find no error and

affirm.

The record reflects that the parties were married in May of 1983. At the time the divorce, appellant was thirty years old, while appellee was forty-eight years of age. No children were born of the marriage. At the time of trial, the parties had essentially agreed upon the value and division of the personal property acquired during the marriage. It was also agreed that the real property had been acquired by appellee prior to the marriage, and thus was not in contention. The only matters in dispute concerned the appellant's claim for rehabilitative alimony, the value of appellee's C.P.A. firm, and the possession of the family dog.

In his opinion of September 13, 1989, the chancellor found that the appellant was not entitled to rehabilitative alimony, and that the appellee was entitled to possession of the dog. The chancellor further determined that appellee's C.P.A. practice had decreased, rather than increased in value, and thus awarded appellant no interest in the business.

At trial held on April 20, 1989, appellant testified that she had a bachelor's degree in early childhood education, and was certified to teach in Arkansas. She said that she had done practice and substitute teaching, but had not held a full-time position. Appellant stated that she had applied for a position at a private school, and that she intended to apply for a position in the Pine Bluff school system. Appellant said that she was presently working at Dillard's as a clerk for thirty-five to thirty-seven hours a week, earning $4.00 an hour. Appellant further related that during the marriage they had lived a comfortable lifestyle, and that appellee provided her $800 to $1,000 a month to be spent on small household expenses or on whatever she wanted. She said that appellee paid the house notes, utilities and other bills. Appellant related that since their separation, her lifestyle had declined, and she asked that she receive $3,000 a month in alimony for at least two years.

As her first point, appellant contends that the trial court erred in failing to award her rehabilitative alimony.[1] We

---

[1] Rehabilitative alimony has been defined as alimony payable for a short, but specific

disagree.

An award of alimony lies within the sound discretion of the chancellor, whose decision will not be reversed absent a clear abuse in the exercise of that discretion. *Aldridge* v. *Aldridge*, 28 Ark. App. 175, 773 S.W.2d 103 (1989). Numerous factors are considered in determining whether to set alimony. *Boggs* v. *Boggs*, 26 Ark. App. 188, 761 S.W.2d 956 (1988). These factors include:

> Among [the factors] are the financial circumstances of both parties, the financial needs and obligations of both the couple's past standard of living, the value of jointly owned property, the amount and nature of the income, both current and anticipated, of both husband and wife, the extent and nature of the resources and assets of each that is "spendable," the amounts which, after entry of the decree, will be available to each of the parties for the payment of living expenses, the earning ability and capacity of both husband and wife, property awarded or given to one of the parties, either by the court or the other party, the disposition made of the homestead or jointly owned property, the condition of health and medical needs of both husband and wife, the relative fault of the parties and their conduct, both before and after separation, in relation to the marital status, to each other and to the property of one or the other

---

and terminable period of time, which will cease when the recipient is, in the exercise of reasonable efforts, in a position of self support. *Turner* v. *Turner*, 158 N.J. Super. 313, 385 A.1d 1280 (1978). We note that there is no case law or statutory law in Arkansas expressly recognizing the concept of rehabilitative alimony. Alimony in Arkansas has been traditionally defined as a continuing allowance payable at regular intervals. *See, Brown* v. *Brown*, 38 Ark. 324 (1881). It has long been an established rule that an award of alimony in fixed installments for a specific period of time was prima facie erroneous, as being an award of a gross sum instead of a continuing allowance. *Webb* v. *Webb*, 262 Ark. 461, 557 S.W2d 878 (1977). *See, also,* e.g., *Beasley* v. *Beasley*, 247 Ark. 338, 445 S.W.2d 500 (1969); *Birnstill* v. *Birnstill*, 218 Ark. 130, 234 S.W.2d 757 (1950); *McIlroy* v. *McIlroy*, 191 Ark. 45, 83 S.W.2d 550 (1935); *Walker* v. *Walker*, 147 Ark. 376, 227 S.W. 762 (1921); *Wood* v. *Wood*, 59 Ark. 441, 27 S.W. 641 (1894); *Linehan* v. *Linehan*, 8 Ark. App. 177, 649 S.W.2d 837 (1983); and *Stout* v. *Stout*, 4 Ark. App. 266, 630 S.W.2d 53 (1982). We point out, however, that with the passage of Act 657 of 1981, now codified as Ark. Code Ann. § 9-12-312(a)(4)(b) (Supp. 1989), an award of alimony, under proper circumstances, may be made in fixed installments for a specified period of time.

or both, the duration of the marriage and even the amount of child support.

*Franklin* v. *Franklin*, 25 Ark. App. 287, 290, 758 S.W.2d 8 (1988) (*quoting Boyles* v. *Boyles*, 268 Ark. 120, 124, 594 S.W.2d 17, 20 (1980). The primary factors to be considered are the need of one spouse, and the ability of the other spouse to pay. *Aldridge* v. *Aldridge, supra.*

In declining the award of alimony, the chancellor made the following findings:

> The plaintiff requests alimony in the amount of $3,000 for a period of 24 months. The strongest factor in favor of an award of alimony is the gross disparity in earning power. On the other hand, there are several factors that militate against a finding of alimony. First, the marriage was of relatively short duration (6 years). Plaintiff is relatively young (31), has a college degree in education and a teaching certificate and no health problems. After considering these factors, as well as the substantial increase in debt that came about during the marriage which is the defendant's responsibility, the Court is of the opinion that an award of alimony is inappropriate.

It is evident from the chancellor's decision that he considered the pertinent factors and applied them to the facts of this case in concluding that the award of alimony was not warranted under the circumstances. We also note that appellant received personal property valued at $38,315 and $5,947.50 in cash. The record reveals that the debts, for which appellee was held responsible, were substantial, including $37,590 owed on credit cards. Moreover, appellant is educated and has the present ability to support herself. All things considered, we cannot say that the chancellor clearly abused his discretion.

As her second issue, appellant argues that the chancellor erred in the method he used in valuing the appellee's C.P.A. practice. Appellee is the sole stockholder of Robert Bolan, Ltd., his C.P.A. firm. The parties proceeded on the theory that appellant's marital interest in the firm was to be determined by the increase in the market value of the practice over the course of

the marriage.[2]

Appellant's expert testified that the proper method of valuing appellee's business was to multiply gross income by a factor of 1.5. He said that this method was an industry rule of thumb for valuing small businesses, particularly C.P.A. firms. The appellee and his expert testified that a more appropriate formula was to multiply annual earnings by three. It was established that the gross income of the practice in 1983 was $232,119 with net income of $64,378. In 1988, the gross income was shown to be $264,910, while the net income for that year was $42,014. The use of appellant's method placed the value of the firm at $348,178.50 at the time of the marriage, and $397,365 at the time of the divorce, the difference resulting in an increased value of $49,186.50 during the marriage. Conversely, the method used by appellee reflected a decrease in value of $67,042. Based on this conflicting evidence, the chancellor found that the business had decreased in value.

Appellant contends that it was error for the chancellor to have accepted appellee's method of valuing the business. She argues that appellee's formula, based on net earnings, was misleading due to appellee's ability to manipulate expenses, and thus net income. She points to several expense items in 1988 which she argues were over and above what was expended in the previous year.

The question on appeal essentially involves the weight and credibility of the witnesses' testimony. Cases on appeal from the chancery court are tried *de novo*, but this court will not reverse the findings of the chancellor unless his findings are clearly erroneous, giving due deference to the chancellor's superior position to determine the credibility of the witnesses and the weight to be given their testimony. *Jones* v. *Jones*, 29 Ark. App.

---

[2] Although the record does not reveal upon what legal basis this theory of division rests, such a division is consistent with the supreme court's decision in *Layman v. Layman*, 292 Ark. 539, 731 S.W.2d 771 (1987). The record seems to suggest, although it is not entirely clear, that the appellee's practice antedated the marriage. If that is so, as recognized in *Layman*, and so ruled by this court in *Yockey v. Yockey*, 25 Ark. App. 321, 758 S.W.2d 421 (1988), the increase in value of property acquired prior to the marriage is specifically excluded from the definition of marital property under Ark. Code Ann. § 9-12-315 (Supp. 1989).

133, 777 S.W.2d 873 (1989).

■ Here, the chancellor included a lengthy and detailed discussion on this issue in his opinion, in which he compared and contrasted the differing methods, and additionally, made calculations of his own. He ultimately concluded that appellee's method was the more reasoned approach. In his calculations, the chancellor added the cost of the expenses in 1988, questioned by appellant, to the net income for that year, which, by use of appellee's formula, nevertheless resulted in a value below that for 1983. Upon our *de novo* review, we cannot say that the chancellor's findings in this regard are clearly against the preponderance of the evidence.

■ As her final point, appellant argues that the chancellor erred in awarding the family dog to appellee. The record discloses that the parties had two pets, a cat and a dog. Appellant received the cat, and we cannot conclude that the chancellor's decision as to the dog is clearly erroneous.

Affirmed.

MAYFIELD, and COOPER, JJ., agree.