Bill Wayne McCLARD *v.* Cynthia Kay McCLARD

CA 94-642                                            901 S.W.2d 33

Court of Appeals of Arkansas
Division I
Opinion delivered July 5, 1995

*Cronkite Law Firm*, by: *Willis D. Cronkite, III*, for appellant.

*Price Law Firm*, by: *Bruce P. Hurlbut* and *Dale Price*, for appellee.

JAMES R. COOPER, Judge. This appeal involves the chancellor's valuation and division of a corporation owned by the par-

ties upon their divorce. In dividing the parties' marital property, the chancellor valued McClard Commercial Realty, Inc., at $125,000 and awarded the appellee half of this amount. On appeal, the appellant argues that the chancellor's valuation of McClard Commercial Realty was clearly erroneous. We disagree and affirm.

Chancery cases are reviewed *de novo* on appeal and the appellate court will not disturb the chancellor's findings unless they are clearly erroneous, giving due deference to the chancellor's superior position to determine the credibility of the witnesses and the weight to be given their testimony. *Bolan* v. *Bolan*, 32 Ark. App. 65, 796 S.W.2d 358 (1990). The question on appeal essentially involves the weight and credibility of the witnesses' testimony and it is the province of the trier of fact to determine the credibility of witnesses and resolve conflicting testimony. *Id.*; *Jones* v. *Jones*, 29 Ark. App. 133, 777 S.W.2d 873 (1989).

During the trial, each party presented witnesses to testify regarding the value of the corporation. One of the appellee's witnesses, Mr. Michael David Robinson, obtained real estate listings and income tax information from the appellant and from these calculated the combined potential commissions of all McClard Commercial Realty's listings at $531,910. To this total, the appellee's expert assigned a value of 25% based upon information he received from other brokers that 20% to 25% of potential commissions would be a reasonable value of real estate listings. Mr. Robinson added $25,000 to this figure as an estimated goodwill value of the McClard trade name, giving a total value of $157,978 to the corporation. He also valued the business under the gross income method by averaging the yearly commission income claimed on McClard Realty's tax returns for the four preceding years to arrive at an average commission income of $123,577. He testified that a market multiple would range between one and one and a half times the gross revenues. He applied this to the average commission income to arrive at an average figure of $154,471. He also used a third method to determine the value of the corporation by calculating the fair market value of McClard Realty. He added the equity, the assets, the goodwill value and the value of the contract listings to arrive at a figure of $167,585.

Mr. Terry Moore testified that he was in the real estate business and that in his opinion, listing contracts have value as assets.

He testified that in determining the value of a company, he would look at the whole book of business and analyze each individual listing.

One of the appellant's witnesses, Mr. Robert Marsh, testified that he did not place a value on the listing contracts because they represented possible future earnings. He testified that there were certain unknowns that would have to be determined in order to place a value on the listings. He testified that it would have to be determined which properties would actually sell, what portion of the listing price would be paid as commissions and expenses, and the difference between the asking price and the price actually paid for the property. He further stated that the business was one that did not have repeat customers year in and year out. In determining the value of the corporation, he looked at what a third party would be willing to pay for it. He calculated the difference between the tangible assets and the liabilities to arrive at a figure of $10,343.

Ms. Sue Cato, a commercial real estate broker, also testified that commercial real estate listings do not have value in and of themselves. However, Paul Dixon, a real estate broker, testified that in his opinion, the listings did have value but that he would want to evaluate each listing.

The chancellor rejected the valuation set forth by the appellant's expert, Mr. Marsh, finding that it was not "remotely in the ballpark of what the business is worth" and that he had not calculated it on any accepted or approved method for evaluating marital assets or businesses that are to be valued for the division of marital property. The chancellor arrived at her valuation of McClard Realty by using some of the methods used by Mr. Robinson, taking the fair market value, balance sheet and the gross income method to arrive at a value. The chancellor discarded the appellee's goodwill value as being arbitrary and decreased the value of the listings from 25% to 20%. To this figure, the chancellor added the commissions receivable, the equity and the assets to arrive at a figure of $123,364. Alternatively, the chancellor took the market range multiple of 1.0 rather than 1.5 or 1.25 on the gross income method to arrive at the figure of $123,577. The chancellor concluded that based upon those two figures, the value of McClard Commercial Realty was $125,000.

■ Here, the testimony regarding the value of the corporation was sharply controverted. There was a large disparity between the value arrived at by Mr. Robinson and the value arrived at by Mr. Marsh. Although the chancellor considered the appellee's valuation too high, she obviously placed greater weight upon the testimony of the appellee's witness, Mr. Robinson, in determining the value of McClard Realty and used Mr. Robinson's valuation methods in making her findings. Upon our *de novo* review, we cannot say that the chancellor's findings are clearly erroneous.

Affirmed.

MAYFIELD, J., agrees.

ROBBINS, J., concurs.

JOHN B. ROBBINS, Judge, concurring.I disagree that a gross income multiplier may be used to value a business organization if such method results in some value being attributed to goodwill without proof that this goodwill is a marketable business asset independent of the presence or reputation of the spouse whose interest is being evaluated. *See Wilson* v. *Wilson*, 294 Ark. 194, 741 S.W.2d 640 (1987); *Tortorich* v. *Tortorich*, 50 Ark. App. 114, 902 S.W.2d 247 (1995).

Here, however, the chancellor alternatively valued the capital stock of McClard Commercial Realty, Inc., by placing no value on goodwill and totaling the fair market value of the corporation's tangible assets, its commissions receivable, and 20% of the potential commissions under its outstanding listing contracts, less corporate debts. I concur in the chancellor's holding that the fair market value of this corporation was $125,000 because such finding is not clearly against the preponderance of the evidence.