Keith P. MILLER *v.* Mary Elieen MILLER

CA 99-346                                                14 S.W.3d 903

Court of Appeals of Arkansas
Division III
Opinion delivered April 19, 2000

*Stephen Bennett*, for appellant.

*Lueken Law Firm*, by: *Patty W. Lueken*, for appellee.

OLLY NEAL, Judge. Appellant and appellee were divorced pursuant to a decree entered September 11, 1998. In connection therewith, the chancellor divided the parties' property, awarded tort damages to appellee, and ordered appellant to pay a portion of appellee's attorney fees and expert witness fees. We affirm with modifications.

Appellant is an architect whose highly specialized practice involves the design of church buildings. His firm is incorporated under the name of Keith Miller Architects & Associates, Inc. The primary issue on appeal is whether the chancellor, in making a division of marital property, erred in her valuation of the corporation. She found that the corporation had a value of $600,000 and ordered appellant to pay appellee half that amount. Payments were to be made in the sum of $30,000 per year for ten years. To secure the payment schedule, appellee was given a lien "on any business entities currently or subsequently owned by [appellant] in the next ten (10) years, or until the debt obligations to [appellee] are fulfilled."

■ Appellant's first argument is that the evidence did not support a valuation of $600,000. Chancery cases are reviewed *de novo* on appeal. *See Bolan v. Bolan*, 32 Ark. App. 65, 796 S.W.2d 358 (1990). However, we do not reverse a chancellor's findings of fact unless they are clearly erroneous. *See id*. At the time a divorce decree is entered, all marital property shall be distributed one-half to each party unless the court finds such division to be inequitable. Ark. Code Ann. § 9-12-315 (Repl. 1998). In this case, appellant does not challenge the inclusion of the business as marital property or the chancellor's decision to award one-half of its value to appellee. His argument is confined to the propriety of the chancellor's valuation. A chancellor's finding regarding the valuation of a business will not be overturned unless it is clearly erroneous. *Nicholson v. Nicholson*, 11 Ark. App. 299, 669 S.W.2d 514 (1984).

To establish the value of Keith Miller Architects & Associates, Inc., appellee presented the testimony of CPA Rachel Kramer Fletcher, a certified valuation analyst. Fletcher placed a value of $974,000 on the adjusted net assets of the business and estimated a "rule-of-thumb" value of $1,040,000. She determined that the

company's primary assets were a $500,000 blueprint inventory and accounts receivable of $349,532. The remaining assets consisted of cash, loans to shareholders, unbilled contracts, physical property, and land. Fletcher began her analysis by referring to the corporation's 1996 income-tax return. The return, which was prepared on a cash basis, reflected approximately $108,000 in assets including the cash, the loans to shareholders, the land, and the physical property, less depreciation. However, to arrive at the value of the business, she inserted normalizing entries for items not included in cash-basis accounting. These included the accounts receivable in the amount of $349,532, the $500,000 blueprint inventory, and unbilled contracts in the amount of $66,000. Further, she altered the corporation's depreciation deduction to reflect the straight-line method rather than the accelerated method used for tax purposes. These calculations resulted in adjusted net assets of $974,000. Then, using an industry-approved rule-of-thumb method for valuation of architecture and engineering firms, she arrived at $1,040,000 as the ultimate value of the company.

Appellant presented no expert witness of his own, but he questioned Fletcher's valuation methods. His primary concern was the $500,000 she assigned as the value of the corporation's blueprints. There was evidence at trial that the company had between 50 and 200 blueprints on hand and had, in the past, resold the designs contained therein to new clients. Using appellant's contract prices, Fletcher calculated that 50 blueprints would have a value of $10,000 each, for a total of $500,000. Appellant denied his ability to resell the blueprints, but appellee, who had worked in the business, and Tim Dowty, appellant's intern, confirmed that it had been done. Appellant did admit that the blueprints in his office were insured for $250,000. The remainder of Fletcher's valuation, including the accounts receivable, the unbilled contracts (which were two works in progress), and the value of the company's physical assets, were gleaned from the corporation's own financial records.

In his argument on appeal, appellant relies on *Tortorich v. Tortorich*, 50 Ark. App. 114, 902 S.W.2d 247 (1995), which stands for the proposition that the goodwill of a business is not a divisible item of marital property if it has no value independent of the presence or reputation of a particular individual. However, no goodwill was included in Fletcher's valuation. Her valuation was

based upon the blueprints, the accounts receivable, and other tangible assets of the business. In any event, the chancellor did not blindly rely upon Fletcher's testimony to establish the value of the corporation. At the close of the evidence, she expressed doubt that the corporation was worth as much as Fletcher had testified. In particular, she was skeptical of the "arbitrary" value that Fletcher placed on the blueprints, although she conceded that they probably had some worth. In her final decree, she valued the business at $600,000, meaning that she deducted approximately $400,000 from Fletcher's valuation.

Given the chancellor's careful consideration of the evidence, especially with the testimony of only one expert to rely upon, we cannot say that the value she placed on the business was clearly erroneous. She obviously deducted a substantial amount from Fletcher's evaluation based upon her doubt regarding the value of the blueprints. The other items included in the valuation had a basis in the evidence and in recognized accounting methods. Additionally, she took into consideration evidence that appellant had been receiving a very good income from the business that enabled him to afford numerous cars and a yacht. In light of the foregoing, we find no error on this point.

Appellant argues next that the chancellor did not have the right to place a lien on his current and future businesses to secure payment of the $300,000. We disagree. First, the chancellor in a divorce case has the power to impose a lien to secure an amount owed pursuant to a property division. *See Speer v. Speer,* 298 Ark. 294, 766 S.W.2d 927 (1989). Secondly, the lien was justified in this case based upon testimony that appellant had once discussed either filing bankruptcy or scaling down his business in the event of a divorce and based upon evidence of appellant's rather extravagant spending habits. A chancellor may fashion any reasonable remedy justified by the proof. *See Jones v. Ray,* 54 Ark. App. 336, 925 S.W.2d 805 (1996).

The next set of arguments concerns the chancellor's award of tort damages to appellee. Appellee testified that, during an argument with appellant in February 1997, he hit her and injured her. As a result, she sought chiropractic treatment and underwent psychological counseling. The chancellor awarded her $15,000 for future medical expenses, to be reduced by $6,000 she owed appel-

lant on another matter. Appellant contends first that the tort claim should have been heard in circuit court. However, appellant did not move to transfer the case to circuit court until midway through trial, despite the fact that appellee's amended complaint had sought damages for physical abuse and appellee's counsel had mentioned the tort claim in opening statements. By the time the motion was made, several witnesses had already testified. Failure to make a timely motion to transfer a case from equity to law waives the right to make the motion unless the equity court is wholly incompetent to grant the relief sought. *See McCune v. Brown*, 8 Ark. App. 51, 648 S.W.2d 811 (1983). The chancery court in this case was not wholly incompetent to hear the tort claim. A court of equity, once it acquires jurisdiction of a case, may hear a tort claim under the clean-up doctrine. *See Roach v. Concord Boat Corp.*, 317 Ark. 474, 880 S.W.2d 305 (1994); *Liles v. Liles*, 289 Ark. 159, 711 S.W.2d 447 (1986).

Appellant also argues that the tort claim was barred by the one-year statute of limitations on assault and battery cases contained in Arkansas Code Annotated section 16-56-104(2) (1987). However, the incident that gave rise to the claim happened in February 1997, and appellee's amended complaint seeking damages for physical injury was filed in October 1997, less than one year later.

Finally on this point, appellant argues that the award of $15,000 in damages was excessive. We disagree. First, we note that appellee, her sister Janet Friday, and appellant's intern Tim Dowty all testified as to the severity of appellee's injuries that resulted from the beating. Secondly, the award was apparently based upon the testimony of appellee's therapist Linda Davis. Davis testified that appellee would need counseling in varying degrees of frequency for a five-year period to cope with the post-traumatic stress that resulted from the beating. Based upon Davis's hourly rate of $137, the award of $15,000 was reasonable in light of her recommendations.

Next, we turn to the chancellor's order to appellant to pay $4,000 of appellee's attorney fees and $4,000 of appellee's expert witness fee. Regarding the attorney fees, courts have the inherent power to award attorney fees in a domestic relations proceeding. *See Tortorich v. Tortorich, supra.* A trial court has considerable discretion in the allowance of attorney fees in a divorce case,

and, absent an abuse of that discretion, the fixing of the amount of fees will not be disturbed on appeal. *See Wilson v. Wilson*, 294 Ark. 194, 741 S.W.2d 640 (1987). We find no abuse of discretion here. The chancellor considered the written arguments of the parties concerning an award of attorney fees. Appellee contended that she had been forced to expend fees to seek arrearages from appellant on alimony and medical bills, to seek a contempt citation, and to seek a motion to compel in connection with appellant's failure to respond to discovery requests. Based upon these contentions, and the apparent credence given to them by the chancellor, we cannot say that an abuse of discretion occurred.

Regarding the expert witness fees, appellant contends that they do not fall within the type of costs that a court is allowed to award in the absence of a statute. *See generally* Ark. R. Civ. P. 54(d)(2). We agree. Expert witness fees are not recoverable costs. *See Sunbelt Exploration Co. v. Stephens Prod. Co.*, 320 Ark. 298, 896 S.W.2d 867 (1995); *State Farm Mut. Ins. Co. v. Brown*, 48 Ark. App. 136, 892 S.W.2d 519 (1995). Because recovery of such fees is not authorized by statute or rule, the trial court erred in its award. *See Wood v. Tyler*, 317 Ark. 319, 877 S.W.2d 582 (1994). We note that, in two domestic relations cases, we have implied that such costs are recoverable. *See Tortorich v. Tortorich, supra; Yockey v. Yockey*, 25 Ark. App. 321, 758 S.W.2d 421 (1988). However, those cases did not directly address the issue, as the *Sunbelt* and *Brown* cases did.

Based upon the foregoing, we modify the court's decree by deducting the $4,000 awarded as payment of appellee's expert witness fee. In all other respects, the decree is affirmed.

Affirmed as modified.

JENNINGS and GRIFFEN, JJ., agree.