2009 Ark. App. 410

**Lisa WHITWORTH, Appellant,**

v.

**Waymond Edward WHITWORTH Jr., Appellee.**

**No. CA 08–1025.**

Court of Appeals of Arkansas.

May 20, 2009.

Bridges, Young, Matthews & Drake PLC, Pine Bluff, by Terry F. Wynne, for appellant.

R. Margaret Dobson, Sheridan, for appellee.

M. MICHAEL KINARD, Judge.

Appellant, Lisa Whitworth, appeals from a denial of alimony by the trial court. We affirm the decision of the trial court.

The parties married in 1987 and divorced in 2007. Appellee has a degree in chemical engineering, which he received in 1982. Appellant has no education beyond a high school diploma, except for a few professional classes on working with children. The parties have two children who,

at the time of the hearing, were ages nineteen and fifteen. Appellee was granted custody of the minor child and had been paying the college expenses for the non-minor child, who lives with him. The parties agreed to a distribution of the marital assets that include the marital home, four acres of property in Mabelvale, appellee's retirement account, appellant's IRA account, stock, and two vehicles.

In 2006, appellee had a gross income of $107,295. In 2007, appellee had a gross income of $106,340. In 2008, appellee was earning $54.30 per hour. Appellee was no longer working overtime, as he had previously. Appellee also has the following deductions from his pay: $134.30 every two weeks for health insurance for the children, $200 per pay period for a credit union and thrift plan, $410 for pension benefits and a stock purchase plan, and $600 toward a house payment of approximately $1100 per month. By agreement of the parties, if the marital home is sold, the equity, if any, is to be divided between the parties. Appellant was provided a trailer, which was located on property owned by her parents. Appellee testified that the household expenses were roughly the same after appellant moved out of the home. Eleven years prior to the divorce, the parties were approximately $200,000 in debt. They reduced their spending and paid off the debt in 2005. Appellee paid appellant $800 per month in temporary support until the hearing. Appellee also paid appellant $5000 as a down payment toward her half of the acreage in Mabelvale. Appellant paid no child support prior to the hearing, per agreement of the parties.

Appellee testified that appellant had several opportunities to earn money during the marriage, but failed to do so. Appellee testified that he paid for training classes for sales on a line of skin-care products as well as for photography training. Appellee also testified that appellant would substitute teach "when she felt like it" and that she did not take a job she was offered to sell insurance.

After the parties separated, appellant worked as a call-taker for a taxi company, earning six dollars and twenty-five cents per hour. Appellant left that position for a job in a restaurant that paid eight dollars per hour. She testified at the hearing that she left that position because she had a bad reaction to the aroma of food. As of the time of the hearing, appellant was unemployed. Appellant testified that she was planning to attend a two-year program in Oklahoma to become a dental assistant. Appellant testified that she had not worked enough to qualify for Social Security, she had no retirement, and she had no health insurance except for the insurance she had through appellee.

Appellant testified that she was diagnosed with ankylosis spondylosis, a disease of arthritis that attaches to the spine, in 1997. Appellant testified that the disease requires her to get up and walk around if she sits for a long period of time, and that it would make it difficult for her to hold a full-time job. Appellant also testified that she was diagnosed with fibromyalgia in 2000, which causes pain in her joints. Appellant testified that she also had TMJ, hypoglycemia, that she had suffered a recent stroke and that she had Bell's palsy in her face. She stated that all of these conditions affected her ability to get a job. Appellant testified at the hearing that she had no prospects for a full-time job. Appellant also testified that appellee did not want her to work during the marriage, which appellee disputed. Appellant testified that she did not pay rent and did not have a car payment. Appellant testified that she needed two years of alimony in order to get through school.

■■■ The sole issue on appeal is whether the trial court erred in denying alimony to appellant. The decision to grant alimony lies within the sound discretion of the circuit court, and will not be reversed on appeal absent an abuse of discretion. *Taylor v. Taylor,* 369 Ark. 31, 250 S.W.3d 232 (2007). The award of alimony is not mandatory but is, instead, discretionary. *Powell v. Powell,* 82 Ark. App. 17, 110 S.W.3d 290 (2003). The purpose of alimony is to rectify an economic imbalance in the earning power and standard of living of the parties to a divorce in light of the particular facts of each case. *Cole v. Cole,* 89 Ark.App. 134, 201 S.W.3d 21 (2005). The primary factor to be considered in awarding alimony is the need of one spouse and the other spouse's ability to pay. *Id.* Other factors include the parties' financial circumstances, the amount and nature of the parties' income, the extent and nature of the parties' assets and resources, and the parties' earning capacity and ability. *Id.*

■■■ At first glance, it appears as though appellee has great ability to pay, while appellant has great need. However, there was evidence introduced showing that, while appellant arguably has need for alimony, appellee's financial situation is not as robust as his salary alone would indicate. Appellee still maintains a house payment and car payments for himself and the children while appellant, pursuant to the agreed upon property division, has no debt, no house payment, and no car payment. In addition, appellee is the primary source of support for the parties' remaining minor child and has been paying the college and living expenses of the non-minor child, who lives with him. The division of property in this case has been structured in a manner that effects an equitable split between the parties in lieu of alimony. Alimony and property divi-sions are complementary devices that a trial court employs to make the dissolution of a marriage as equitable as possible. *Davis v. Davis,* 79 Ark.App. 178, 84 S.W.3d 447 (2002).

Appellant testified that she suffers from several medical conditions, all of which she claimed would negatively impact her chances of securing full-time employment. However, the record reflects that appellant held two positions following the parties' separation and that her health problems were not the reason she left either position. Appellant also did not submit any evidence that her health problems kept her from working prior to the parties' separation. The record does not indicate that appellant's health would be a major impediment to her finding employment.

Although the facts of this case would arguably support an award of alimony if one had been made, it is not our duty under our standard of review to simply substitute our judgment for that of the trial court, which was in a far better position to judge the credibility of the witnesses. It is instead our duty to determine if the trial court abused its discretion in making its findings regarding an award of alimony. We find that the trial court has not abused its discretion and affirm.

Affirmed.

GRUBER, MARSHALL, and HENRY, JJ., agree.

ROBBINS and MARSHALL, JJ., concur.

BAKER, J., dissents.

JOHN B. ROBBINS, Judge, concurring.

I agree with the majority opinion and its rationale for affirming the trial court. I write separately to point out that our court recently affirmed a denial of alimony where the circumstances of the requesting

spouse were significantly more dire than Ms. Whitworth's. *See Evtimov v. Milanova*, 2009 Ark. App. 208, 300 S.W.3d 110. In *Evtimov*, the requesting spouse could hardly communicate in English, was earning minimum wages from two part-time jobs, and was living out of his car inasmuch as the marital home was awarded to the more affluent spouse, who was earning a six-figure income as a professor at UALR. If we were correct in affirming the denial of rehabilitative alimony in *Evtimov*, we surely do not err in affirming in this case.

MARSHALL, J., joins in this concurrence.

KAREN R. BAKER, Judge, dissenting.

An award of rehabilitative alimony should be made in this case. Our courts initially recognized rehabilitative alimony in 1990, when this court considered *Bolan v. Bolan*, 32 Ark⌐₇App. 65, 796 S.W.2d 358 (1990). Rehabilitative alimony is alimony that is payable for a short, specified duration of time. *See Bolan*, 32 Ark.App. at 67 n. 1, 796 S.W.2d at 360 n. 1. The primary purpose of rehabilitative alimony is to afford the recipient a specific period of time in which to become self supportive. *See id.*

A popular treatise on divorce explains the importance of a trial court's utilizing an award of rehabilitative alimony to allow a spouse who has been out of the work force for a significant amount of time the opportunity to become self-supporting:

> Generally, the purpose of rehabilitative maintenance is to allow the recipient spouse to become self-supporting; its purpose is to aid the former spouse as he or she transitions back into the workplace and self sufficiency. Rehabilitative alimony enables the receiving spouse to establish the capacity for self-support commensurate with the standard of living established during the course of the marriage, through the redevelopment of previous skills or the provision of training necessary to develop new skills. The goal of self-sufficiency must, however, be balanced against the realistic likelihood that the spouse will be able to attain a level of support comparable to the standard of living enjoyed during the marriage, especially where the spouse has not been in the work force for a long period of time.

An award of rehabilitative alimony is also designed to permit former spouses to develop their own lives free from obligations to each other. Rehabilitative alimony is a "bridge-the-gap" measure to aid the recipient spouse in making the transition from married life to being single.

> Other purposes rehabilitative alimony is intended to serve include the following:
>
> ● to give the paying spouse some predictability concerning financial obligations
>
> ● to prevent possible further court appearances by permitting the court to take into consideration reasonably foreseeable changes in the recipient spouse's circumstances
>
> ● to encourage the recipient spouse to find employment or complete education or training leading to employment

24A Am.Jur.2d *Divorce* § 760 (2008) (footnotes omitted).

Ms. Whitworth's future self-sufficiency is a realistic likelihood if rehabilitative alimony is awarded. Rehabilitative alimony is specifically designed to bridge-the-gap from her role in the marriage as a homemaker and primary caretaker of the children to her independence as a single individual and independent contributor to the

children's welfare. While the youngest daughter would be close to the age of majority by the time Ms. Whitworth finished proposed training as a dental assistant, experience and common sense tell us that a parent's ability to assist and contribute to their children's welfare does not end when they reach the age of eighteen or graduate from high school. As the majority recognized in attributing value to Mr. Whitworth's contributions to the couple's oldest child who is nineteen, a parent's ability to contribute to an adult child's welfare is legally significant to a court's consideration and an evaluation of need.

The facts and circumstances of this case fit squarely within the parameters of our case law supporting an award of rehabilitative alimony. The parties had a lengthy, twenty-year marriage. Mr. Whitworth was gainfully employed during the marriage. He is currently earning well in excess of $100,000 a year. His monthly income exceeds his expenses by approximately $1,400. He has a credit union account and thrift plan, as well as pension benefits and a stock purchase plan. On the other hand, Ms. Whitworth has no post-high school education or special training. She testified that the parties agreed that she would be a stay-at-home mom. Although Mr. Whitworth disputed that the parties had agreed, it is undisputed that she performed that role for fifteen years. She has had only two jobs since the parties' separation, both of which paid near minimum wage. She has no retirement; she has no health insurance. She suffers from numerous health-related issues, including ankylosis spondylosis, fibromyalgia, TMJ, hypoglycemia, Bell's pal-

sy, and she recently suffered a stroke. She now lives in a trailer home on property owned by her parents. The majority's decision today leaves Ms. Whitworth in likely poverty for the foreseeable future. The decision is particularly unjustified given the likelihood of Ms. Whitworth achieving self-sufficiency within a period of a few years.

Ms. Whitworth's proposed choice of training and skill development appears well suited for the physical limitations she described. Although her training plan was not as developed as it might have been clearly, some form of education and training is necessary if Ms. Whitworth is to do more than merely survive. The majority stated, "The record does not indicate that appellant's health would be a major impediment to her finding employment." This may be true. However, without retraining or further education the record does not support the conclusion that Ms. Whitworth can support herself in a manner even approaching her standard of living during the parties' twenty-year marriage. In fact, it is extremely unlikely that she will be able to earn more than minimum wage or pay more than minimum child support. Under these facts and circumstances, the trial court clearly erred in failing to award rehabilitative alimony.[1]

I would reverse.

1. The concurring opinion makes note of this court's recent decision in *Evtimov v. Milanova*, 2009 Ark. App. 208, 300 S.W.3d 110, stating, "[O]ur court recently affirmed a denial of alimony where the circumstances of the requesting spouse were significantly more dire than Ms. Whitworth's." Regardless of the ultimate circumstances of the requesting spouses, the facts of these two cases were substantially different. *Evtimov* involved a four-year marriage rather than a twenty-year marriage. Additionally, in *Evtimov* there was

no indication that the requesting spouse had been absent from the workforce for an extended period—fifteen years in this case— while providing child-care services in the home.