

# ARKANSAS COURT OF APPEALS

DIVISIONS II & III

**No.** CV-14-1100

|  |  |
|---|---|
| | **Opinion Delivered** September 30, 2015 |
| CHRISTOPHER FOSTER | |
| APPELLANT | APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT [No. DR-2013-835] |
| V. | |
| | HONORABLE MARCIA R. HEARNSBERGER, JUDGE |
| LEAH FOSTER | |
| APPELLEE | AFFIRMED |

## LARRY D. VAUGHT, Judge

Appellant Christopher Foster appeals the divorce decree entered by the Garland County Circuit Court on July 28, 2014. He challenges the awards of rehabilitative alimony and attorney's fees and costs to appellee Leah Foster. We affirm.

Christopher and Leah were married on February 12, 2002. Three children were born of the marriage: AF (age eleven), EF (age seven), and FF (age five). Christopher filed for divorce, alleging general indignities, in September 2013. Leah answered, challenging the grounds for divorce and requesting alimony, child support, and an unequal distribution of the marital assets. Leah subsequently counterclaimed for divorce on the ground of general indignities, again requesting alimony, child support, and an unequal distribution of the marital assets.

A hearing was held on March 19, 2014, to resolve the distribution of the marital property, child support, alimony, and attorney's fees.[1] Testimony revealed that, during the marriage,

---

[1]The parties had reached an agreement as to child custody and visitation, as well as the disposition of the marital residence.

SLIP OPINION

Christopher was the primary income earner, with an average annual net income of approximately $124,000 in 2011 and 2012. Evidence also showed that Leah, a stay-at-home mother, had been the primary care giver to the children. While she had an active real-estate license, she earned no appreciable income from that job because of her responsibilities with the children. Leah testified that, unlike Christopher, she only had a high-school education. There was testimony that although the family lived in Hot Springs, Christopher worked in Little Rock, and his job prevented him from providing help with the children.

Leah testified to her plan for rehabilitative alimony. She believed that she should receive $5000 per month for the first three years, $2500 per month for the next two years, and $2000 per month for the last three years. She said that this would allow her to transition into the workforce over time, while still allowing her to fulfill her parental responsibilities. Leah also requested attorney's fees and costs, citing the economic imbalance between the parties. She introduced into evidence a cost-and-fee statement from her attorney's office in support of her request. Counsel for Christopher was able to highlight several inconsistencies in the fee statement during cross-examination.

The trial court entered the decree of divorce in July 2014. In the decree, the trial court approved the parties' property-settlement agreement, awarded Leah child support, and awarded her rehabilitative alimony pursuant to Arkansas Code Annotated section 9-12-312(b), in the amount of $4500 per month for the first three years, $3500 per month for the next three years, and $2500 per month for the final four years. The trial court also awarded Leah $14,190 in attorney's fees and $647.18 in costs.

SLIP OPINION

On appeal, Christopher first argues that the trial court misinterpreted Act 1487, which amended Arkansas Code Annotated section 9-12-312[2] to specifically include a provision for rehabilitative alimony. It is his contention that the general assembly, by amending the statute in this regard, intended to create a clear distinction between permanent alimony and rehabilitative alimony. More specifically, he contends that the trial court erroneously applied the traditional factors relating to permanent alimony and that these factors are not applicable to rehabilitative alimony.

Our courts recognized rehabilitative alimony in 1990, when this court considered *Bolan v. Bolan*, 32 Ark. App. 65, 796 S.W.2d 358 (1990). The *Bolan* court defined rehabilitative alimony as alimony that is payable for a short, specified duration of time. *Id.* at 67 n.1, 796 S.W.2d at 360 n.1. The primary purpose of rehabilitative alimony is to afford the recipient a specific period of time in which to become self-supportive. *Id.*, 796 S.W.2d at 360 n.1. In *Bolan*, and every rehabilitative-alimony case thereafter, this court has conducted the same analysis in determining the appropriateness of the award—including a consideration of the factors applying to permanent alimony. The primary factor is the financial need of one spouse and the other spouse's ability to pay. *Spears v. Spears*, 2013 Ark. App. 535, at 6. Other factors include the financial circumstances of both parties; the couple's past standard of living; the value of jointly

---

[2]Section 9-12-312 provides that "[a]limony may be awarded under proper circumstances concerning rehabilitation to either party in fixed installments for a specified period of time so that the payments qualify as periodic payments within the meaning of the Internal Revenue Code." Ark. Code Ann. § 9-12-312(b)(1) (Supp. 2013). The statute continues, "[w]hen a request for rehabilitative alimony is made to the court, the payor may request or the court may require the recipient to provide a plan of rehabilitation for the court to consider in determining [w]hether or not the plan is feasible[ ]and [t]he amount and duration of the award." *Id.* § 9-12-312(b)(2)(A), (B).

owned property; the amount and nature of the income, both current and anticipated, of both parties; the extent and nature of the resources and assets of each party; the amount of each party's spendable income; the earning ability and capacity of both parties; the disposition of the homestead or jointly owned property; the condition of health and medical needs of the parties; and the duration of the marriage. *Id.*

Nothing in the statute's amendment changed this analysis. If the general assembly had intended to change this analysis, it could have so provided. It did not.

Moreover, it is instructive that the general assembly's amendment made the provision of a rehabilitative-alimony plan discretionary, not mandatory. Thus, the general assembly clearly contemplated that the trial court must use the traditional factors when determining whether rehabilitative alimony is appropriate, and, if so, the amount and duration of the award. The General assembly did not expressly provide any factors for the trial court's determination. Our case law, however, does. *Dozier v. Dozier*, 2014 Ark. App. 78, at 4–5, 432 S.W.3d 82, 85 (applying the traditional alimony factors in a rehabilitative-alimony case). And the general assembly is presumed to have full knowledge of our judicial determinations. *McLeod v. Santa Fe Trail Transp. Co.*, 205 Ark. 225, 168 S.W.2d 413 (1943) (holding that to aid in the construction of a statute, it is presumed that the legislature, in enacting a law, does so with the full knowledge of the constitutional scope of its powers, of prior legislation on the same subject, and of judicial decisions under the preexisting law). Therefore, we hold that the language of Act 1487 does not prevent the trial court from awarding rehabilitative alimony, based upon consideration of the well-settled factors, in an amount that it finds reasonable under the circumstances.

In awarding Leah alimony, the trial court found that there was an economic imbalance in the earning power of the parties. The court noted that Christopher had a financial degree, while Leah had only a high school diploma. As such, Christopher had been the primary source of income for the family. Moreover, his large income was extremely liquid as opposed to Leah's assets. And while Leah had a license to sell real estate, she failed to earn any appreciable income during the marriage. The trial court also noted that her ability to earn any significant income from real estate was diminished by the downturn in the real-estate market and that the responsibility of caring for their active children, given Christopher's busy schedule and employment in a different city, impeded her economic activities outside the home. As a result, the trial court awarded rehabilitative alimony, but structured it in such a way that it would be (1) reduced as the children matured and needed less parental involvement and (2) continued for a reasonable time thereafter as might be necessary for her to rehabilitate herself for employment.

The decision whether to award alimony is a matter that lies within the trial court's sound discretion, and on appeal, this court will not reverse the trial court's decision to award alimony absent an abuse of that discretion. *Delgado v. Delgado*, 2012 Ark. App. 100, at 6, 389 S.W.3d 52, 57. An abuse of discretion means discretion improvidently exercised, i.e., exercised thoughtlessly and without due consideration. *Id.*, 389 S.W.3d at 57. The trial court is in the best position to view the needs of the parties in connection with an alimony award. *Jones v. Jones*, 2014 Ark. App. 614, at 3, 447 S.W.3d 599, 601.

We hold that the trial court considered the relative financial stability of the parties and the potential for income based on their respective positions and determined that alimony was

5

appropriate. Additionally, the trial court rejected the plan as proposed, modifying it slightly as to the amounts and time periods of the payments, which demonstrated the exercise of thoughtful and due consideration. Therefore, we hold that the trial court did not abuse its discretion in awarding Leah rehabilitative alimony.

Christopher argues that the rehabilitative-alimony award is improper because it did not include a "plan of rehabilitation" pursuant to section 9-12-312. He contends that there was no actual "rehabilitation" involved in the award because it did not include a plan with quantifiable academic or technical training in order to reach a specific career goal or milestone, and it essentially allowed Leah to continue to be a stay-at-home mom.

The statute provides that "the payor *may* request or the court *may* require the recipient to provide a plan of rehabilitation for the court to consider." Ark. Code Ann. § 9-12-312(b)(2) (emphasis added). The language is discretionary, not mandatory; therefore, a rehabilitation plan is not required under the statute. Moreover, the statute does not specify what information the plan must include. While Leah's rehabilitation plan did not provide details as to how or when she would become self-sufficient, the statute does not require such details, and we reject Christopher's narrow construction of the statute.

The statute simply requires that the alimony award be made under "proper circumstances concerning rehabilitation." Ark. Code Ann. § 9-12-312(b)(1). Such circumstances are not defined, and we hold that there is no abuse of discretion where the trial court determined that the age and needs of the parties' children were currently a significant impediment to her ability to earn a living. Furthermore, the trial court's award was based on more than Leah's obligations

as a mother. There was significant evidence as to the amount of time it would take for her to build up a real-estate practice sufficient to support herself. The court's decree recognized this by establishing a plan that initially provided Leah with full support that slowly tapered off over time. In the decree, the trial court stated that the initial amount would provide adequate monthly income "regardless of how much she is able to generate as a realtor or in another job," while later amounts would only "supplement" her income. The trial court stated that, at the end of the ten-year period, Leah should be fully able to support herself. To find an abuse of discretion here would be to rule that trial courts may never take family circumstances, such as the needs of young children, into consideration in establishing a rehabilitative-alimony award. The language of the statue does not support such a ruling.

The last argument Christopher raises regarding alimony is that the amount awarded—$408,000[3]—was excessive. He argues that more than half of his income for the first few years will be consumed by alimony and that the amount is about 48% for the ten-year period.

Our court has never reviewed an award of alimony solely on a mathematical-formula analysis. *Kuchmas v. Kuchmas*, 368 Ark. 43, 46, 243 S.W.3d 270, 272 (2006) (holding that the amount of alimony should not be reduced to a mathematical formula because the need for flexibility outweighs the need for relative certainty). Here, because the trial court considered the income of both parties, the assets of both parties, and the needs of Leah over the life of the

---

[3]Christopher's $408,000 figure includes the total amount of alimony, attorney's fees, and costs he will pay over the ten-year duration of the award.

award, we hold that the amount of alimony awarded by the trial court was not an abuse of discretion.

Christopher's remaining arguments revolve around the trial court's award of attorney's fees and costs to Leah. He argues that the trial court's award of attorney's fees and costs—the exact amount listed on Leah's counsel's billing statement—was in error because the billing statement contained inaccuracies. He also argues that the trial court abused its discretion in finding that she was not able to pay her fees.

In domestic-relations proceedings, the trial court has the inherent power to award attorney's fees, and whether the trial court should award fees and the amount thereof are matters within the court's discretion. *Tiner v. Tiner*, 2012 Ark. App. 483, at 15, 422 S.W.3d 178, 187. Due to the trial court's intimate acquaintance with the record and the quality of service rendered, we usually recognize the superior perspective of the trial court in assessing the applicable factors, and an award of attorney's fees will not be set aside absent an abuse of discretion. *Id.* at 16, 422 S.W.3d at 187. Finally, when addressing a trial court's award of attorney's fees, our courts have often observed that there is no fixed formula in determining what is reasonable. *Id.* at 16, 422 S.W.3d at 187.

Despite the inconsistencies in the billing statement, we hold that the trial court did not abuse its discretion on the attorney's fees and costs award. In determining whether to award attorney's fees, the trial court must consider the relative financial abilities of the parties. *Poole v. Poole*, 2009 Ark. App. 860, at 14, 372 S.W.3d 420, 429. In the case at bar, the trial court did that, expressly finding that Leah was not in a financial position to pay her attorney's fees, while Christopher had liquid funds available to do so. Also, we note that the billing statement on

which the award was based did not include fees for the final hearing, posthearing briefing, and preparation of the precedent. Therefore, based on our standard of review and the record before us, we cannot say that the court abused its discretion on this point.

Affirmed.

ABRAMSON, GRUBER, and HOOFMAN, JJ., agree.

WHITEAKER and HIXSON, JJ., dissent.

**PHILLIP T. WHITEAKER, Judge, dissenting.** I agree with the majority that Act 1487 does not prevent the trial court from considering the general factors governing an award of alimony—including a consideration of the economic imbalances in the earning power and standard of living of the divorcing parties, the division of property, the health and medical needs of the parties, and the duration of the marriage—in determining the appropriateness of an award of rehabilitative alimony. I also agree with the majority's statement that the primary purpose of rehabilitative alimony is to afford the recipient a specific period of time in which to become self-supportive. I cannot agree, however, with the majority's conclusion that the trial court's award in this case serves such a rehabilitative purpose. As a result, I respectfully dissent.

By both statute and case law, Arkansas recognizes the award of alimony under appropriate circumstances. Under appropriate circumstances, our courts have awarded "permanent" alimony. *Gilliam v. Gilliam*, 2010 Ark. App. 137, 374 S.W.3d 108. Under appropriate circumstances, our courts have awarded "temporary" or "durational" alimony. *Trucks v.*

*Trucks*, 2015 Ark. App. 189, 459 S.W.3d 312. The distinctive difference between "permanent" and "temporary" alimony is implicitly within its duration.

Under appropriate circumstances, our courts have also awarded "rehabilitative" alimony. *Bolan v. Bolan*, 32 Ark. App. 65, 796 S.W.2d 358 (1990). Rehabilitative alimony is "[a]limony found necessary to assist a divorced person in acquiring the education or training required to find employment outside the home or to reenter the labor force." Alimony, Black's Law Dictionary 86 (9th ed. 2009). Thus, the term "rehabilitative alimony," or "alimony concerning rehabilitation" as it is termed by Arkansas Code Annotated section 9–12–312, necessarily implies the presence of some factor other than the limited duration of the alimony itself.

The trial court here expressly awarded Leah Foster what it denotes as "rehabilitative alimony"; yet it failed to declare any basis for rehabilitation in its order, nor did it provide any incentive or requirement for Ms. Foster to obtain any education or training that would allow her to reenter the labor force or become self-sufficient. Instead, the evidence presented at the hearing indicated that Leah Foster is a relatively young and healthy individual with no physical, mental, or emotional disability affecting her ability to obtain gainful employment and is, in fact, a licensed real estate agent. The only factor affecting her ability to maintain employment is her parental responsibility. This is not a factor subject to or capable of "rehabilitation." Additionally, while there was evidence that a downturn in the real estate market would affect her earning capacity as a real estate agent, this fact is also not subject to rehabilitation. And, even if real estate is not a lucrative employment opportunity for Ms.

Foster at this time, there is nothing in the record to suggest that she is somehow unable to or incapable of engaging in some type of employment compatible with her schedule or to obtain education or training to allow her to obtain such employment.

Simply stated, the alimony awarded by the court is not rehabilitative in nature. It was clearly designed to maintain the status quo so that Ms. Foster may continue to stay at home with her children. Thus, while it may be temporary, durational, transitional, or limited alimony, it is not rehabilitative and should not be classified as such. To do so is to warp the concept of rehabilitative alimony as envisioned by our legislature. For these reasons, I dissent.

HIXSON, J., joins.

**KENNETH S. HIXSON, Judge, dissenting.** I join Judge Whiteaker's dissent. The trial judge improperly applied the recently-enacted statutory provision regarding rehabilitative alimony. There must be a reason that our legislature enacted this provision in 2013, and it must mean something more than a finite term of alimony. I add my own dissent to state that I would reverse for an additional reason: this alimony award was excessive and constituted an abuse of discretion.

Alimony's purpose is to rectify the economic imbalance in the earning power and standard of living of the divorcing parties, and the primary factors to consider are the financial need of one spouse and the other spouse's ability to pay. *Spears v. Spears*, 2013 Ark. App. 535; *Page v. Page*, 2010 Ark. App. 188, 373 S.W.3d 408. An alimony award should be set in an amount that is reasonable. *Id*. On appeal, we determine whether the circuit court reached a decision that is clearly unreasonable. *Whitworth v. Whitworth*, 2009 Ark. App. 410, 319

SLIP OPINION

S.W.3d 269. This amount of alimony is clearly unreasonable.

As stated in the majority opinion, these parties were married for about twelve years. The husband was the wage-earner for the family, with an average net monthly income of $10,363. With the award of alimony here of $4,500 for the first three years in addition to the obligation to pay child support, the husband is left with $3,386 in monthly income to support himself. The wife, on the other hand, will receive $6,977 per month for that period of time, in excess of her stated monthly financial need and essentially two-thirds of the husband's income. This is clearly unreasonable. I would reverse and remand on this issue because it demonstrates an abuse of discretion. *See Mitchell v. Mitchell*, 61 Ark. App. 88, 964 S.W.2d 411 (1998) (reversing an excessive alimony award and reducing it accordingly).

As to the alimony statute, Arkansas Code Annotated section 9-12-312 was amended in the 2013 legislative session by Act 1487, to add a new subsection (b) regarding rehabilitative alimony:

> (b)(1) Alimony may be awarded under proper circumstances concerning rehabilitation to either party in fixed installments for a specified period of time so that the payments qualify as periodic payments within the meaning of the Internal Revenue Code.
> (2) When a request for rehabilitative alimony is made to the court, the payor may request or the court may require the recipient to provide a plan of rehabilitation for the court to consider in determining:
> > (A) Whether or not the plan is feasible; and
> > (B) The amount and duration of the award.
> (3) If the recipient fails to meet the requirements of the rehabilitative plan, the payor may petition the court for a review to determine if rehabilitative alimony shall continue or be modified.
> (4) A person paying alimony is entitled to petition the court for a review, modification, or both of the court's alimony order at any time based upon a significant and material change of circumstances.

Rehabilitative alimony means something more than the less-than-permanent duration of



it. Our function on appeal is to interpret, clarify, and apply the law. I believe, like Judge Whiteaker, that the trial court erred in its application of this statute.

WHITEAKER, J., joins in this dissent.

*Gill Ragon Owen, P.A.*, by: *Sharon Elizabeth Echols* and *Christopher L. Travis*, for appellant.

*Q. Byrum Hurst, P.A.*, by: *Q. Byrum Hurst*, for appellee.