Phillip T. Whiteaker, Judge, dissenting. I agree with the majority that Act 1487 does not prevent the trial court from considering the general factors governing an award of alimony — including a consideration of the economic imbalances in the earning power and standard of living of the divorcing parties, the division of property, the health and medical needs of the parties, and the duration of the marriage— in determining the appropriateness of an award of rehabilitative alimony. I also agree with the majority’s statement that the primary purpose of rehabilitative alimony is to‘afford the recipient a specific period of time in which to- become self-supportive. I cannot agree, however, with the majority’s conclusion that the trial court’s- award in this case serves such ■ a rehabilitative purpose. As a result, I respectfully dissent. By both statute and case law, Arkansas recognizes thq award of alimony under appropriate circumstances, Under appropriate circumstances, our courts, have awarded “permanent” alimony. Gilliam v. Gilliam, 2010 Ark. App. 137, 374 S.W.3d 108. Under appropriate circumstances, our -courts have awarded “temporary” or “durational” alimony. Trucks v. Trucks, 2015 Ark. App. 189, 459 S.W.3d 312. The distinctive difference between “permanent” and “temporary” alimony is implicitly within its duration. Under appropriate circumstances, our courts have also awarded “rehabilitative” alimony. Bolan v. Bolan, 32 Ark. App. 65, 796 S.W.2d 358 (1990). Rehabilitative alimony is “[ajlimony found necessary to assist a divorced person in acquiring the education or training required to find employment outside the home or to reenter the labor force.” Alimony, Black’s Law Dictionary 86 (9th ed. 2009). Thus, the term “rehabilitative alimony,” or ‘‘alimony concerning rehabilitation” as it is termed by Arkansas Code Annotated section 9-12-312, necessarily implies the presence of some factor other than the limited duration of the alimony itself. The trial court here expressly awarded Leah Foster what it denotes as “rehabilitative -alimony”;- yet it failed to declare any basis for rehabilitation in its order, nor did it provide any incentive or requirement for Ms. Foster to obtain any education or training that would allow her to reenter the labor force or become self-sufficient. Instead, the evidence presented at the hearing indicated that Leah Foster is a relatively young and healthy, individual with no physical, mental,-or emotional disability affecting her ability to obtain gainful employment and is, in fact, a licensed real estate agent. The only factor affecting her ability to maintain employment is her parental responsibility. This is not a factor subject to or capable of “rehabilitation.” Additionally, while there was evidence that a downturn in the real estate market would affect her earning' capacity as a real estate agent, this fact is also not subject to rehabilitation. And, even if real estate is not a lucrative employment opportunity for MSjJjjFoster at this time, there is nothing In the record to suggest that she is somehow unable to or incapable of engaging in some type of employment compatible with her schedule or to obtain education or training to allow her to obtain such employment. Simply stated, the alimony awarded by the court is not rehabilitative in nature. It was clearly designed to maintain the status quo so that Ms. Foster may continue to stay at home with her children. Thus, while it may be temporary, durational, transitional, or limited alimony, it is not rehabilitative and should not be classified as such. To do so is to warp the concept of rehabilitative alimony as envisioned by our legislature. For these reasons,. I dissent. Hixson, J., joins.